1
2
3
4
5
6
7
8
9
10          **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13   STEVEN C. MARTINEZ,                      CASE NO. CV F 09-0899 LJO DLB

14                  Plaintiff,              **ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND SEVER**

15          vs.                             (Docs. 15, 17.)

16   DERRAL G. ADAMS, et al.,

17                  Defendants.
                                        /
18

19                            **INTRODUCTION**

20          California Department of Corrections and Rehabilitation ("CDCR") defendant officials seek to

21   dismiss plaintiff inmate Steven C. Martinez' ("Mr. Martinez'") inadequate medical care and related

22   claims as insufficiently plead and barred by res judicata and failure to exhaust administrative remedies.

23   CDCR defendant corrections officers and nurses seek to sever Mr. Martinez' claims against them in that

24   the claims arise out of isolated events.  This Court considered defendants' F.R.Civ.P. 12(b)(6) motion

25   to dismiss and motion to sever claims on the record and VACATES the March 11, 2010 hearing,

26   pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES Mr. Martinez'

27   claims against the CDCR defendant officials and SEVERS in part Mr. Martinez' claims against the

28   CDCR defendant corrections officers and nurses.

                                        1

1

## BACKGROUND[1]

2

### The Parties

3    Since 2003, Mr. Martinez has been incarcerated at California State Prison – Corcoran ("CSPC").

4 Mr. Martinez is a quadriplegic and insulin dependent diabetic  and is "dependent on Defendants for all

5 aspects of living except breathing."

6    Defendant Derral G. Adams ("Warden Adams") is the CSPC warden.  Defendant William J.

7 McGuinness, M.D. ("CMO McGuinness"), is the CSPC chief medical officer.

8    Defendants Frances Garza ("Nurse Garza"), Emily Vargas ("Nurse Vargas"), Catherine Nacar

9 ("Nurse Nacar"), Michael Van Natta ("Nurse Van Natta"), and Mike Smith ("Nurse Smith") are CSPC

10 nurses, provided care to Mr. Martinez, and will be referred to collectively as the "nurse defendants."

11    Defendants Cornelio Garcia ("Officer Garcia") and Paul Sena ("Officer Sena") are correctional

12 officers at the CSPC Acute Care Hospital.[2]

13

### Individualized And General Allegations

14    The complaint alleges generally that Mr. Martinez is a victim of defendants' "abuse,"

15 "negligence," and "retaliation."  The complaint's allegations against the individual and unidentified

16 defendants are summarized as follows.

17

### *Corrections Officer Defendants*

18    On January 17, 2007 and February 11, 2007, Officers Garcia and Sena, respectively, "refused

19 to unlock the door to Plaintiff's room at the urgent request of nursing staff and at a time when Plaintiff

20 needed urgent nursing care."  Officers Garcia and Sena "denied medical staff access to Plaintiff to

21 retaliate against Plaintiff and to unlawfully punish him."

22    Non-defendant Officer Bradley "regularly" punishes Mr. Martinez "by turning his hospital room

23 light on at night to deprive him of sleep, and by repeatedly slamming the door to the room."

24    Unidentified "[d]efendant correctional officers slam the door to Plaintiff's room causing shock

25

26    [1]    The factual recitation is derived generally from Mr. Martinez' Complaint for Damages for Willful
Violations of Civil Rights and for Pendent State Claims ("complaint").

27

28    [2]    Warden Adams, CMO McGuinness, Nurses Garza, Vargas, Nacar, Van Natta and Smith, and Officers
Garcia and Sena will be referred to collectively as "defendants."

and distress," "turn on Plaintiff's bright room lights at night in order to disturb Plaintiff's sleep," and "verbally abuse Plaintiff to further his torment."

### Nurse Defendants

Nurse Garza on an unspecified date "threatened Plaintiff with retaliation by her husband, who is a correctional officer, for filing complaints" and "violated Plaintiff's constitutionally protected right to confidential communications with this attorney by reading mail between Plaintiff and his attorney and other protected documents."

On November 4, 2007, Nurse Nacar "abused and battered Plaintiff when she simulated letting him fall, and then catching him." On an unspecified date, Nurse Nacar, during catheterization, "broke the sterile field but continued to use the contaminated equipment" and jerked "the catheter from Plaintiff's uretha."

On November 7, 2007, Nurse Vargas "assaulted Mr. Martinez by making a death threat against him" in "retaliation for Plaintiff asserting his rights." Nurse Vargas further retaliated by filing "charges against Plaintiff which resulted in a disciplinary hearing."

On November 17, 2007, Nurse Smith "pushed Plaintiff back into his chair by pushing on the front of his throat" to retaliate against Mr. Martinez "for his complaint over Smith twisting Plaintiff's head during an attempt to reposition him."

On November 21, 2007, Nurse Van Natta intentionally left Mr. Martinez "in a position on his back known to Van Natta to be painful to Plaintiff and to cause him difficulty breathing" to retaliate against Mr. Martinez "for complaints about the care he was receiving."

On unspecified dates, non-defendant Nurse Brewer "denied Plaintiff access to medical care to address episodes of autonomic dysreflexia, removed his call button from him, refused to provide blood sugar checks, or to catheterize him."

An unidentified nurse on unspecified dates twice "put a pillow case over Plaintiff's head during treatment to punish him."

### Defendant CSPC Officials

Warden Adams and CMO McGuinness:

1.      Failed to train properly Officers Garcia and Sena "to prioritize patient health care" and

3

"to protect patient health and safety";

2. Were "personally aware of the allegations" in the complaint and "implemented a policy that deprives Plaintiff of his constitutional rights";

3. Received numerous written reports (no less than 25 for Warden Adams) "of medical neglect and abuse" by staff;

4. Made "misleading and false statements claiming that no neglect and abuse was taking place";

5. "[I]mplemented a policy to cover up medical neglect and abuse thereby ratifying that conduct";

6. "[I]mplemented a policy of turning a blind eye to constitutional deprivations thereby allowing them to occur"; and

7. Engaged in "deliberate indifference to Plaintiff's health and safety" to repudiate Mr. Martinez' constitutional rights.

### *Retaliation And Other Wrongs*

Unidentified defendants:

1.  "[R]etaliate against Plaintiff for filing complaints in violation of his rights as a patient and his right to free speech."  "Some complaints are not processed by staff as a way to retaliate against Plaintiff";

2. "[D]eny Plaintiff the use of adaptive equipment, medical care, treatment, and rehabilitation";

3. "[M]ade false allegations about Plaintiff's medical condition, personal history, and character";

4. "[P]laced Plaintiff in dangerous positions and left him alone unprotected and at risk of harm to his health and safety";

5. "[R]efused to provide the bowel and bladder program" and "forced Mr. Martinez to eliminate in his bed instead of a toilet";

6. Deprived Mr. Martinez of a tilt table; and

7. "[F]orced Plaintiff to sit on a Hoyer-lift strap which creates risk of skin breakdown"

4

**Legal Claims**

The complaint alleges statutory and common law claims comprising:

1.    A (first) 42 U.S.C. § 1983 ("section 1983") claim that all defendants violated Mr. Martinez' Eighth Amendment "rights to be free from cruel and unusual punishment in the form of Defendants' deliberate indifference to Plaintiffs' personal health and safety" and "medical needs";

2.    A (second) claim of abuse of dependent adult under California Welfare & Institutions Code, §§ 15600, et seq., that all defendants failed to exercise reasonable care "by failing to protect Plaintiff from health and safety hazards";

3.    A (third) medical negligence claim against unidentified "Defendant Health Care Providers" that they "did not use reasonable care toward Plaintiff in providing procedures, policies, facilities, supplies, and qualified personnel reasonably necessary for the treatment of Plaintiff"[3];

4.    A (fouth) retaliation claim that all defendants retaliated against Mr. Martinez "to discourage or prevent Plaintiff from taking part in the lawful exercise of his rights . . . to be free from unlawful punishment and to free speech, and the loss of benefits otherwise due him";

5.    A (fifth) intentional infliction of emotional distress claim that all defendants "acted with reckless disregard of the probability that Plaintiff would suffer emotional distress";

6.    A (sixth) assault claim against Nurse Vargas that she "intended to cause or place Plaintiff in apprehension of a harmful or an offensive contact with Plaintiff's person"; and

7.    A (seventh) battery claim against Nurses Garza, Nacar, Smith and Van Natta that they "acted in a manner that constituted a harmful or offensive contact with Plaintiff's person."

The complaint seeks damages for Mr. Martinez' "physical damage to his body and emotional pain" and medical expenses, punitive damages and attorney fees.

---

[3]    This Court construes the medical negligence claim as against CMO McGuinness and Nurses Garza, Vargas, Nacar, Van Natta and Smith.

1 **WARDEN ADAMS AND CMO McGUINNESS' F.R.Civ.P. 12(b)(6) MOTION TO DISMISS**

2    Warden Adams and CMO McGuinness seek to dismiss the claims against them based on res

3 judicata, insufficiently plead factual allegations, and failure to exhaust administrative remedies.

4    A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

5 forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

6 of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

7 whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

8 support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

9 *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

10 there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

11 cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

12 *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

13    In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

14 most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

15 whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

16 *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

17 true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

18 *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

19 need not permit an attempt to amend if "it is clear that the complaint could not be saved by an

20 amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 U.S. 940, 946 (9th Cir. 2005).

21    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

22 allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

23 than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

24 *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

25 Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

26 plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing*

27 *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

28 direct or inferential allegations respecting all the material elements necessary to sustain recovery under

1   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

2   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

3        In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

4   explained:

5             To survive a motion to dismiss, a complaint must contain sufficient factual
       matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
6       claim has facial plausibility when the plaintiff pleads factual content that allows the court
       to draw the reasonable inference that the defendant is liable for the misconduct alleged.
7       . . . The plausibility standard is not akin to a "probability requirement," but it asks for
       more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

8

9        After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

10   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

11   content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret*

12   *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

13        The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

14             First, the tenet that a court must accept as true all of the allegations contained in
       a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
15       a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,
       only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
16       . Determining whether a complaint states a plausible claim for relief will . . . be a
       context-specific task that requires the reviewing court to draw on its judicial experience
17       and common sense. . . . But where the well-pleaded facts do not permit the court to infer
       more than the mere possibility of misconduct, the complaint has alleged – but it has not
18       "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

19             In keeping with these principles a court considering a motion to dismiss can
       choose to begin by identifying pleadings that, because they are no more than conclusions,
20       are not entitled to the assumption of truth. While legal conclusions can provide the
       framework of a complaint, they must be supported by factual allegations. When there are
21       well-pleaded factual allegations, a court should assume their veracity and then determine
       whether they plausibly give rise to an entitlement to relief.

22

23   *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

24        With these standards in mind, this Court turns to Warden Adams and CMO McGuinness'

25   challenges to the complaint.

26                                   **Res Judicata**

27        Defendants invoke the res judicata doctrine to bar Mr. Martinez' section 1983 claims against

28   Warden Adams and CMO McGuinness.  Defendants point out that in *Martinez v. State of California,*

                                          7

*et al.*, Case No. CV F 07-0996 AWI DLB ("prior action"), Mr. Martinez pursued in this Court by a first amended complaint ("prior action FAC") claims against Warden Adams and CMO McGuinness for civil rights violations under section 1983, Americans with Disabilities Act violations, abuse of dependent adult under California Welfare and Institutions Code sections 15600, et seq., and medical negligence. The prior action FAC alleges that Warden Adams and CMO McGuinness ignored negligence and abuse of nurses and correctional officers, including those named as defendants in this action, and "implemented or ratified policies that allowed the deprivations" or "turned a blind eye to the deprivations thereby allowing them to occur." The prior action FAC accused Warden Adams and CMO McGuinness of deliberate indifference in "failure to adequately supervise and train" employees.

Defendants in the prior action pursued a F.R.Civ.P. 12(b)(6) motion to dismiss section 1983 claims against Warden Adams and CMO McGuinness. This Court dismissed the prior action's section 1983 claim against Warden Adams and CMO McGuinness in the absence of sufficient facts that they "personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." (Internal citations omitted.) This Court further found that Warden Adams is not a health care provider under California Government Code section 844.6

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411 (1980). "Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised *or could have been raised*' in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (emphasis in original)).

Res judicata serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645 (1979). Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen*, 449 U.S. at 94,

1    101 S.Ct. 411.

2         Res judicata applies when there is: "(1) an identity of claims; (2) a final judgment on the merits;

3    and (3) identity or privity between parties." *Stewart*, 297 F.3d at 956 (quoting *Owens*, 244 F.3d at 713).

4         Defendants correctly note the identity of the parties in this action and the prior action.  As to

5    identity of claims, defendants point out that Mr. Martinez' section 1983 claims against Warden Adams

6    and CMO McGuinness "were raised or could have been raised in the prior action" and that this action's

7    claims "are a subset of the claims that Plaintiff asserted" in the prior action.

8         Defendants argue that F.R.Civ.P. 12(b)(6) dismissal of the prior action's section 1983 claim

9    against Warden Adams and CMO McGuinness "was a final adjudication on the merits."  Defendants

10   point to F.R.Civ.P. 41(b) which provides that unless a dismissal order provides otherwise, dismissal

11   under F.R.Civ.P. 41(b) "operates as an adjudication on the merits."

12        "The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a

13   'judgment on the merits.'"  *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399, n. 3, 101 S.Ct.

14   2424 (1981).

15        Mr. Martinez offers no meaningful challenge that his section 1983 claims against Warden Adams

16   and CMO McGuinness are barred by res judicata. In his opposition papers, Mr. Martinez merely "seeks

17   to dismiss the civil rights claims against Adams and McGuinness without prejudice to amending the

18   complaint pending discovery."  This Court construes Mr. Martinez lack of meaningful opposition on the

19   res judicata defense as concession that his section 1983 claims against Warden Adams and CMO

20   McGuinness are barred.  Mr. Martinez' attempt to reserve "civil rights claims" is unavailing given the

21   res judicata effects of the prior action to subject to dismissal section 1983 claims against Warden Adams

22   and CMO McGuinness.

23                              **Section 1983 – Civil Rights Violation**

24        Defendants challenge the absence of factual allegations to sustain section 1983 claims against

25   Warden Adams and CMO McGuinness.  Defendants note Mr. Martinez' "unwillingness or inability to

26   acknowledge" F.R.Civ.P. 12(b)(6) standards given the complaint's "conclusory assertions of culpability

27   are unsupported by allegations of fact."  Defendants fault the (first) section 1983 claim's failure to allege

28   facts that Warden Adams and CMO McGuinness "personally participated" in alleged deprivation.

                                          9

1

***Direct Participation***

2        "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

3   acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

4   claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

5   States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

6        "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

7   vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

8   811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

9   Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived

10  of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S.

11  247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996

12  (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of

13  a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689

14  (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional

15  right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.  "Section 1983 imposes liability

16  for violations of rights protected by the Constitution, not for violations of duties of care arising out of

17  tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

18        "Section 1983 creates a cause of action based on personal liability and predicated upon fault;

19  thus, liability does not attach unless the individual defendant caused or participated in a constitutional

20  deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct.

21  1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises

22  only upon a showing of personal participation by the defendant.")  "The inquiry into causation must be

23  individualized and focus on the duties and responsibilities of each individual defendant whose acts or

24  omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633.  Section

25  1983 requires that there be an actual connection or link between the defendant's actions and the

26  deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct.

27  2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

28        A plaintiff cannot hold an officer liable "because of his membership in a group without a

showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

The complaint alleges that based on receipt of written reports, Warden Adams and CMO McGuinness were "personally aware of" neglect and abuse experienced by Mr. Martinez and "implemented a policy that deprives Plaintiff of his constitutional rights."  The complaint accuses Warden Adams and CMO McGuinness of making "misleading and false statements claiming that no neglect and abuse was taking place" to "cover up medical neglect and abuse thereby ratifying that conduct."  The complaint asserts that Warden Adams and CMO McGuinness "implemented a policy of turning a blind eye to constitutional deprivations thereby allowing them to occur" and engaged in "deliberate indifference to Plaintiff's health and safety" to repudiate Mr. Martinez' constitutional rights.  The complaint further alleges that Warden Adams and CMO McGuinness failed to train properly Officers Sena and Garcia.

Defendants identify as mere insufficient facts for section 1983 claims that Warden Adams and CMO McGuinness "received some reports that made them aware of Plaintiff's allegations of staff

misconduct."   Defendants characterize remaining allegations as to Warden Adams and CMO McGuinness as "mere legal conclusions or threadbare recitations of elements."

The complaint fails to allege facts of Warden Adams and CMO McGuinness direct participation in alleged neglect or abuse of Mr. Martinez.  As to "participation," the complaint alleges no more than Warden Adams and CMO McGuinness' inaction.  The complaint fails to articulate a "policy" which Warden Adams and CMO McGuinness implemented to deprive Mr. Martinez' constitutional rights.  The complaint identifies no misleading or false statements attributable to Warden Adams and CMO McGuinness.  The complaint fails to allege facts of Warden Adams and CMO McGuinness' respective individual participation in unlawful conduct to warrant dismissal of section 1983 claims against them.

**First Amendment Retaliation**

Defendants fault the (fourth) retaliation claim's absence of facts of Warden Adams and CMO McGuinness' "adverse action" to respond to Mr. Martinez' exercise of a protected right.  Defendants reiterate the absence of facts that Warden Adams and CMO McGuinness "participated in the alleged deprivation."

"Deliberate retaliation by state actors against an individual's exercise of this right [to access to a tribunal] is actionable under section 1983."  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  The Ninth Circuit Court of Appeals has enumerated elements for First Amendment retaliation in the "prison context": "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005).  A "plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision."  *Soranno's Gasco*, 874 F.2d at 1314.

The retaliation claim alleges that "Defendants retaliated against Plaintiff through coercion, threats of punishment and bodily harm, actual punishment, denial of rights or privileges, denial of medical and nursing care, and other activities intended to discourage or prevent Plaintiff from taking part in the lawful exercise of his rights or benefitting therefrom."  The claim further alleges that the

12

"retaliatory action did not advance legitimate penological goals" and that Mr. Martinez "suffered a chilling effect on the free exercise of his rights to be free from unlawful punishment and to free speech, and the loss of benefits otherwise due him."

Defendants fault the retaliation claim's "conclusory allegations" and lack of "factual support." Defendants criticize the claim's failure to identify:

1.     Mr. Martinez' conduct to motivate adverse action by Warden Adams and CMO McGuinness;

2.     Warden Adams and CMO McGuinness' "coercive actions," "threats of punishment and bodily harm," and "actual punishment inflicted" on Mr. Martinez;

3.     Rights, privileges, medical or nursing care denied by Warden Adams and CMO McGuinness; and

4.      When Warden Adams and CMO McGuinness took adverse actions.

Mr. Martinez criticizes defendants' narrow focus on the retaliation claim's allegations without reference to the preliminary and general allegations. Mr. Martinez points to allegations that Warden Adams and CMO McGuinness have duties "to supervise the administration of health care for inmates" and "to ensure that Mr. Martinez' rights are guaranteed." Mr. Martinez further notes allegations that Warden Adams and CMO McGuinness "knew of Mr. Martinez' ongoing complaints of abuse, neglect and deliberate indifference," covered up wrongdoing, and "turned a blind eye to Mr. Martinez' suffering." Mr. Martinez claims that the complaint alleges that retaliation denied him free speech and rights "to be free from unlawful punishment" and "to proper medical and nursing care."

Much like his complaint, Mr. Martinez engages in generalities and platitudes. Defendants validly criticize the retaliation claim.  The complaint chiefly articulates that Warden Adams and CMO McGuinness received reports of neglect and abuse and took no action.  The retaliation claim merely presents conclusions and threadbare recitations of elements of retaliation.  The complaint lacks facts in the areas identified by defendants.  In the absence of facts to support elements of First Amendment retaliation, the retaliation claims fails as to Warden Adams and CMO McGuinness to warrant its dismissal against them. Mr. Martinez fails to articulate potential to cure deficiencies in the retaliation claim against Warden Adams and CMO McGuinness to further support dismissal of the claim against

1  them.

2  **Dependent Adult Abuse**

3  Defendants argue that the second claim of dependent adult abuse under California Welfare and

4  Institutions Code sections 15600, et seq., fails as to CMO McGuinness in that such claim "cannot be

5  brought against healthcare providers." Defendants also challenge insufficient allegations against Warden

6  Adams.

7  California Welfare and Institutions Code section 15657.2 provides: "Notwithstanding this article,

8  any cause of action for injury or damage against a health care provider, as defined in Section 340.5 of

9  the Code of Civil Procedure, based on the health care provider's alleged professional negligence, shall

10  be governed by those laws which specifically apply to those professional negligence causes of action."

11  The "Legislature apparently concluded that the high standard imposed by [Welfare and Institutions

12  Code] section 15657 – clear and convincing evidence of (i) liability and (ii) recklessness, malice,

13  oppression or fraud – adequately protects health care providers from liability under the statute for acts

14  of simple or even gross negligence." *Covenant Care, Inc. v. Superior Court*, 32 Cal.4th 771, 785, 86

15  P.3d 290 (2004).

16  To obtain the remedies under California Welfare and Institutions Code section 15657, "a plaintiff

17  must demonstrate by clear and convincing evidence that defendant is guilty of something more than

18  negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct. The latter three

19  categories involve 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injurious'

20  nature." *Delaney v. Baker*, 20 Cal.4th 23, 31, 82 Cal.Rptr.2d 610 (2004). "'Recklessness' refers to a

21  subjective state of culpability greater than simple negligence, which has been described as a 'deliberate

22  disregard' of the 'high degree of probability' that an injury will occur." *Delaney*, 20 Cal.4th at 31, 82

23  Cal.Rptr.2d 610 (citations omitted).    "Recklessness, unlike negligence, involves more than

24  'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level

25  of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved

26  in it.'" *Delaney*, 20 Cal.4th at 31-32, 82 Cal.Rptr.2d 610 (citations omitted).

27  The dependent adult abuse claim merely references absence of reasonable care. The claim points

28  to no specific misconduct of CMO McGuinness, a medical professional. Mr. Martinez offers nothing

14

1   to support the claim as to Warden Adams and CMO McGuinness to warrant its dismissal as to them.

2   Mr. Martinez merely suggests that "[i]f Defendants did what Plaintiff alleges they did, then he is entitled

3   to the relief requested."  Such platitude offers nothing to defend the claim.  Mr. Martinez points to

4   nothing to salvage the claim, even with an attempt to amend.  The complaint lacks facts of conduct of

5   sufficient degree to invoke dependent adult abuse remedies to warrant dismissal of the claim as to

6   Warden Adams and CMO McGuinness.

7                                           **Medical Negligence**

8        Defendants fault the (third) medical negligence claim's absence of facts to support elements of

9   medical negligence.

10        "The courts require only that physicians and surgeons exercise in diagnosis and treatment that

11  reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the

12  medical profession under similar circumstances."  *Bardessono v. Michels*, 3 Cal.3d 780, 788, 91

13  Cal.Rptr. 760 (1970).

14        The medical negligence claim merely alleges that "Defendant health care providers did not use

15  reasonable care toward Plaintiff in providing procedures, policies, facilities, supplies, and qualified

16  personnel."  Defendants are correct that the complaint lacks allegations that CMO McGuinness'

17  diagnoses or treatment fell below the standard of care.  Mr. Martinez offers nothing to suggest that even

18  an attempt to amend would salvage the claim.  The complaint fails to raise facts to hint that CMO

19  McGuinness fell below the standard of care to warrant the claim's dismissal as to him.

20                           **Intentional Infliction Of Emotional Distress**

21        Defendants further challenge the (fifth) intentional infliction of emotional distress claim's failure

22  to allege facts to support elements of the claim.

23        The elements of a cause of action for intentional infliction of emotional distress are: (1)

24  defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the

25  probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress;

26  and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional

27  distress.  *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110

28  (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole v. Fair Oaks Fire Protection Dist.*, 43

Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).[4]  The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991).  The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds,* 152 Cal.App.4th 518, 534, 61 Cal.Rptr.3d 304 (2007).  There is no bright line standard for judging outrageous conduct, and a case-by-case appraisal of conduct is required.  *Cochran*, 65 Cal.App.4th at 494, 76 Cal.Rptr.2d 540.

The intentional infliction of emotional distress claim merely alleges that "Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress." To defend the claim,

---

[4]      Other California courts have identified the elements as "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct."  *Cochran v. Cochran,* 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998) (citing *KOVR-TV, Inc. v. Superior Court,* 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (1995)).

Mr. Martinez offers inconsequential emotional pleas that "[u]nlawful punishment in violation of the guarantees in the Eighth Amendment is outrageous behavior" and "[d]enying a dependent adult a safe environment with appropriate care . . . is outrageous behavior." Defendants are correct that the claim's elements are unsupported by allegations that Warden Adams and CMO McGuinness failed to train properly Officers Garcia and Sena and failed to act in response to reports of neglect and abuse. Mr. Martinez offers nothing to suggest resuscitation of the claim by an attempt to amend. The claim lacks facts to establish intentional infliction of emotional distress elements as to Warden Adams and CMO McGuinness to warrant the claim's dismissal as to them.

**Failure To Exhaust Administrative Remedies**

Defendants contend that the federal and state claims against Warden Adams and CMO McGuinness are subject to dismissal due to Mr. Martinez' failure to "seek a Director's level decision on any claim against Adams or McGuinness that he is asserting in this action." Defendants point to Mr. Martinez' failure "to present or identify a single grievance he submitted concerning his claims against Adams or McGuinness."

The "failure to exhaust nonjudicial remedies" is "a matter of abatement, which is subject to an unenumerated Rule 12(b) motion." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *cert. denied*, 540 U.S. 810, 124 S.Ct. 50 (2003). "In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide issues of fact." *Wyatt*, 315 F.3d at 1120. "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt*, 315 F.3d at 1120.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner must exhaust nonjudicial remedies: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms." *Booth v. Churner*, 532 U.S. 731, 732, 121 S.Ct. 1819 (2001).

Following *Booth*, the U.S. Supreme Court in *Woodford v. Ngo*, 548 U.S. 81, 85, 93, 126 S.Ct. 2378 (2006), explained that exhaustion must be "proper":

> The PLRA strengthened this exhaustion provision in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. See *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process. *Id.*, at 734, 121 S.Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle, supra*, at 524, 122 S.Ct. 983.

A "grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

California prisoners have a right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). An inmate must submit an appeal within 15 working days of the event or decision appealed. Cal. Code Regs. tit. 15, § 3084.6(c).

"[T]o exhaust administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, [and] (4) third level appeal to the director of the California Department of Corrections." *Barry v. Ratelle*, 985 F.Supp. 1235, 1237, 1238 (S.D. Cal. 1997) ("Because Plaintiff has attempted to appeal the prison officials' inaction with regard to his treatment to every level of the prison grievance system, it does not appear (and the moving party has not attempted to show) that Plaintiff has failed to exhaust his administrative remedies within the prison system.").

Under California law, the "exhaustion of administrative remedies" rule "is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Abelleira v. District Court of Appeal, Third Dist.*, 17 Cal.2d 280, 292, 109 P.2d 942 (1941). "If an administrative remedy is provided by statute, a litigant must ordinarily show that he has invoked and exhausted the remedy before resorting to the judicial process." *Myers v. Mobil Oil Corp.*, 172 Cal.App.3d 1059, 1064, 218 Cal.Rptr. 630 (1985). "Exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." *Myers*,

1    172 Cal.App.3d at 1064, 218 Cal.Rptr. 630.

2        "The requirement that administrative remedies be exhausted 'applies to grievances lodged by

3    prisoners.'" *In re Dexter,* 25 Cal.3d 921, 925, 160 Cal.Rptr. 118 (1978).  "Under state law, inmates are

4    required to exhaust administrative remedies, even when seeking money damages unavailable in the

5    administrative process." *Wright v. State*, 122 Cal.App.4th 659, 666, 668, 19 Cal.Rptr.3d 92 (2004) (the

6    PLRA exhaustion requirement "parallels the exhaustion requirement under state law").

7        Defendants note that the California and PLRA exhaustion requirements serve "similar interests"

8    and that under comity principles, this Court should apply California exhaustion requirements.

9    Defendants point out that Mr. Martinez has failed to pursue subject grievances "through the third level

10   of CDCR's administrative process" and to exhaust administrative remedies prior to the May 21, 2009

11   filing of this action.  Defendants note that Mr. Martinez has submitted 33 appeals through the CDCR

12   system, none of which assert that Warden Adams or CMO McGuinness made false and misleading

13   statements when they "knew that reports of the neglect and abuse were true" and "implemented a policy

14   to cover up medical neglect and abuse thereby ratifying that conduct."  Defendants attribute none of Mr.

15   Martinez' appeals to "describe or imply misconduct of any kind" by Warden Adams or CMO

16   McGuinness.

17       Mr. Martinez attributes defendants to seek dismissal in that "neither 'Adams' nor 'McGuinness'

18   appears in any administrative claims."  Mr. Martinez appears to argue that defendants attempt to hold

19   Mr. Martinez to an unjustified level of specificity to satisfy exhaustion requirements.  Mr. Martinez

20   points to *Griffin*, 557 F.3d at 1120, where the Ninth Circuit explained that "a prison's own grievance

21   process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion

22   requirement."

23       In *Griffin*, 557 F.3d at 1120, the Ninth Circuit addressed "the standard of factual specificity

24   required when a prison's grievance procedures do not specify the requisite level of detail."  The Ninth

25   Circuit adopted the Seventh Circuit's standard in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), that

26   "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance

27   suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin*, 557 F.3d

28   at 1120 (quoting *Strong*, 297 F.3d at 650)).

1    Mr. Martinez attempts to twist lack of specificity to defend failure to exhaust all necessary

2    grievance levels.  Defendants do not raise issues of lack of specificity of Mr. Martinez' grievances.

3    Defendants challenge his failure to exhaust the four levels of appeal.  Mr. Martinez' points regarding

4    screening of his grievances may warrant consideration if his complaint alleged sufficient claims against

5    Warden Adams and CMO McGuinness.  In the absence of sufficiently plead claims against Warden

6    Adams and CMO McGuinness, failure to exhaust further supports dismissal of the claims against

7    Warden Adams and CMO McGuinness.

8                          **DEFENDANTS' MOTION TO SEVER CLAIMS**

9    Defendants further seek to sever the claims against them in that they "do not arise from the same

10   series of transactions and occurrences, and do not share common questions of law or fact."  Defendants

11   note that the complaint lumps "separate instances of alleged inadequate medical care, harassment, or

12   abuse" arising from separate incidents in causes of action alleging claims "against many Defendants."

13   Defendants point to the separate incidents, as alleged in the complaint, involving Officers Garcia and

14   Sena and the nurse defendants.  Given Warden Adams and CMO McGuinness' dismissals, this Court

15   need address severance as to only Officers Garcia and Sena and the nurse defendants.

16                                    **Permissive Joinder**

17   F.R.Civ.P. 20(a)(2) addresses permissive joinder of defendants and provides that defendants may

18   be joined if:

19          (A) any right to relief is asserted against them jointly, severally, or in the
     alternative with respect to or arising out of the same transaction, occurrence, or series of
20   transactions or occurrences; and

21          (B) any question of law or fact common to all defendants will arise in the action.

22   F.R.Civ.P. 20 "is designed to promote judicial economy, and reduce inconvenience, delay, and

23   added expense." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  "If the test for permissive

24   joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no

25   substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350.  A district court's

26   order granting severance under F.R.Civ.P. 20 is reviewed for abuse of discretion. *Coughlin*, 130 F.3d

27   at 1351.

28   F.R.Civ.P. 20(a) "imposes two specific requirements for the permissive joinder of parties: (1)

a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action." *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980).  In *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), the Seventh Circuit Court of Appeals explained improper joinder in the prisoner context:

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits . . .

F.R.Civ.P. 21 empowers a court "on just terms" to "drop a party" or "sever any claim against a party."  "As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it."  *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Defendants argue that the complaint fails to satisfy F.R.Civ.P. 20(a) in that the claims against the nine defendants "do not arise out of the same transactions or occurrences" and do not "share common questions of law or fact."  As such, defendants conclude that Mr. Martinez should pursue claims against one defendant in this action, and "file a new separate action for each other Defendant."

In response, Mr. Martinez identifies as a "unitary problem" the need "to affect changes in Plaintiff's medical care and conditions of confinement through injunctive relief and those changes motivated by the payment of damages."

### *Same Transaction Or Occurrence*

Defendants contend that Mr. Martinez' claims do not arise from the same transaction or occurrence to warrant severance.  Defendants note that plaintiffs' claims arise "at different times, by different actions, and from different circumstances."  Defendants argue that a plaintiff is unable to demonstrate the same transaction or occurrence "by merely asserting claims under the same right to relief or by alleging that the claims have a common characteristic."  *See Saval v. BL Ltd.*, 710 F.2d 1027, 1031-1032 (4th Cir. 1983) ("Considering the record as a whole, it is apparent that each appellant's claim stands on its own."); *see Harris v. Spellman*, 150 F.R.D. 130, 132 (N.D. Ill. 1993) (prisoners' claims did not stem from "the  same transaction or occurrence" in that they "were punished in separate hearings for entirely different incidents of purported misconduct").

To distinguish the claims against them, defendants note that:

1         1.      They held different position with different duties;

2         2.      Officers Garcia and Sena dispensed no medical care; and

3         3.      The alleged incidents arose at differing times over months with no connecting facts.

Mr. Martinez responds that all defendants "are responsible for perpetuating a policy to unlawfully harm and punish Mr. Martinez through his medical care."

The complaint alleges series of events regarding Mr. Martinez' confinement, access to medical care, and medical care provided. The gist of the allegations as to Officers Garcia and Sena is that they denied Mr. Martinez' access to medical care and tormented him. The gist of the allegations against the nurse defendants is that they negligently cared for Mr. Martinez or retaliated against him because he complained. A clear distinction arises in the claims against Officers Garcia and Sena, on one hand, the nurse defendants, on the other hand, to demonstrate that the collective claims against them do not arise out the same transaction or occurrence.

### Common Questions Of Law Or Fact

Defendant argue that the complaint lacks common questions of law or fact as to claims against defendants. Defendants note that common causes of action against them is insufficient to constitute common legal or factual questions. *See Wynn v. National Broadcasting Co., Inc.*, 234 F.Supp.2d 1067, 1081 (C.D. Cal. 2002) ("While it is true that Plaintiffs have alleged claims against Defendants based on the same general theory of law, this is not a sufficient ground to find that their claims raise common legal or factual questions."). Defendants further note that whether the nurse defendants were negligent on separate occasions "is not a question in common with whether another nurse was negligent." *Smith v. North Am. Rockwell Corp. Tulsa Div.,* 50 F.R.D. 515, 522 (N.D. Okla. 1970) ("even a cursory examination of the potential factual and legal issues here presented reveals that again there is no common ground among these plaintiffs").

Mr. Martinez attempts to invoke common questions of law or fact arising from defendants' joint and several liability. Mr. Martinez cites no authority to impose joint and several liability for his alleged claims, especially given that the complaint alleges separate, distinct incidents and actions of Officers Garcia and Sena and the nurse defendants. Common questions of law or fact fail to support a joinder of Officers Garcia and Sena and the nurse defendants.

*Other Factors*

Defendants claim jury confusion and prejudice to defendants from joint trial of all claims against the respective defendants. Mr. Martinez responds that "[w]ithout consolidating all of the issues, a jury will be denied a meaningful understanding of Mr. Martinez's [sic] story."

"Although the specific requirements of Rule 20, discussed above, may be satisfied, a trial court must also examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness. For example, when making a decision whether to allow the permissive joinder of a party, a court should consider such factors as the possible prejudice that may result to any of the parties in the litigation . . ." *Desert Empire Bank*, 623 F.2d at 1375; *see Wynn*, 234 F.Supp.2d at 1078 (even if F.R.Civ.P. 20(a) requirements are satisfied, "there is no requirement that the parties must be joined" in that F.R.Civ.P. 20(a) is "permissive in character" and "joinder in situations falling within the rule's standard is not required").

Defendants point out that even with proper joinder, a court is empowered to sever and order separate trials "to prevent delay, prejudice, or unnecessary delay." *See* F.R.Civ.P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims . . .") "Under Rule 20(b), the district court may sever trials in order to avoid prejudice." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (district court properly severed claims in light of "legal confusion" and "likelihood of prejudice and confusion outweighed the gains from judicial economy").

Defendants argue that potential confusion and prejudice to defendants offset potential benefits of a joint trial to warrant severance of Mr. Martinez' claims against defendants. Defendants point out that a single trial would present the jury with the "hopeless task of trying to discern who did and said what to whom and for what reason." *Moorhouse v. Boeing Co.*, 501 F.Supp. 390, 392 (E.D. Pa. 1980). Defendants note that a joint trial would prejudice defendants in that each defendant "will be tainted by the presentation of evidence regarding the alleged misdeeds of another, unfairly resulting in guilt by association." *Wynn*, 234 F.Supp.2d at 1089. Defendants further argue that a single trial's judicial economy "is far outweighed" by potential jury confusion and prejudice to defendants, especially given that severance will not deprive Mr. Martinez of a substantial right.

Defendants raise valid points.  Nonetheless, Mr. Martinez suggests that he will attempt to prove that the nurse defendants colluded to deprive him medical care or to retaliate against him.  Overlap appears with the claims against the nurse defendants, who are better suited to defend such collusion claim jointly.  Moreover, a joinder of the nurse defendants promotes economy of resources, especially if Mr. Martinez' claims are disposed of by summary judgment.  As such, severance of claims against Officers Sena and Garcia, on one hand, and the nurse defendants, on the other hand, is in order.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the (first) section 1983, (second) dependent adult abuse, (fourth) retaliation claim and (fifth) intentional infliction of emotional distress claims against Warden Adams and CMO McGuinness;

2. DISMISSES with prejudice the (third) medical malpractice claim against CMO McGuinness;

3. DIRECTS the clerk to enter judgment in favor of defendants Derral G. Adams and William J. McGuinness and against plaintiff Steven C. Martinez;

4. SEVERS and DISMISSES without prejudice claims against defendants Cornelio Garcia and Paul Sena from this action;

5. ORDERS Mr. Martinez, no later than March 22, 2010, to file a separate action against defendants Cornelio Garcia and Paul Sena, if he continues to desire to pursue claims against them;

6. ORDERS the parties to proceed in this action with only Mr. Martinez' claims against nurse defendants Frances Garza, Emily Vargas, Catherine Nacar, Michael Van Natta, and Mike Smith; and

7. ORDERS nurse defendants Frances Garza, Emily Vargas, Catherine Nacar, Michael Van Natta, and Mike Smith, no later than March 22, 2010, to file and serve a response to Mr. Martinez' complaint.

IT IS SO ORDERED.

Dated:   **March 8, 2010**                     **/s/ Lawrence J. O'Neill**

1

UNITED STATES DISTRICT JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28