UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. MARTINEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>DERRAL G. ADAMS, et al.,<br><br>                    Defendants. | 1:09cv0899 LJO DLB<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION<br><br>ORDER DENYING WITHOUT PREJUDICE RENEWED MOTION TO DISMISS MISJOINED DEFENDANTS<br><br>(Document 33) |

On May 5, 2010, Defendants Frances Garza, Emily Vargas, Catherine Nacar, Michael Van Natta, and Mark Smith ("Defendants") filed the instant motion for summary adjudication. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. The matter was heard on June 25, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge. David A. Carrasco appeared on behalf of Defendants. Ken I. Karan appeared telephonically on behalf of Plaintiff Steven C. Martinez ("Plaintiff" or "Martinez").

**BACKGROUND**

Plaintiff filed this civil rights action on May 21, 2009, against Defendants Derral G. Adams, William J. McGuinness, M.D., Frances Garza, Emily Vargas, Catherine Nacar, Michael Van Natta, Mike Smith, Cornelio Garcia and Paul Sena.[1]

---

[1] Plaintiff pursued virtually identical claims against these Defendants in *Martinez v. Adams, et al.*, Case No. 1:07cv0996 DLB. The parties stipulated to dismiss certain claims/parties, including those in this action, without prejudice.

1

On February 2, 2010, Defendants filed a motion to dismiss claims against Derral G. Adams and William J. McGuinness, M.D., and to sever claims against the remaining defendants. Plaintiff opposed the motion.

On March 9, 2010, the Court dismissed with prejudice the claims against Defendants Adams and McGuinness and severed and dismissed without prejudice the claims against Defendants Cornelio Garcia and Paul Sena.[2]  The Court ordered the matter to proceed with Plaintiff's claims against Defendants Frances Garza, Emily Vargas, Catherine Nacar, Michael Van Natta and Mark Smith ("nurse defendants").  In denying severance of claims as to the individual nurse defendants, the Court stated:

> Mr. Martinez suggests that he will attempt to prove that the nurse defendants colluded to deprive him medical care or to retaliate against him.  Overlap appears with the claims against the nurse defendants, who are better suited to defend such collusion claim jointly.  Moreover, a joinder of the nurse defendants promotes economy of resources, especially if Mr. Martinez' claims are disposed of by summary judgment.

Order of March 9, 2010, p. 24.

On May 5, 2010, the nurse defendants filed the instant motion for summary adjudication on the issue of whether they conspired to undermine Plaintiff's health care treatment.  The nurse defendants also renewed their motion to dismiss misjoined defendants.

Plaintiff filed an opposition on June 8, 2010, and the nurse defendants filed a reply on June 17, 2010.

Non-expert discovery in this matter closed on July 2, 2010.  Expert discovery closes on August 13, 2010.  The dispositive motion deadline is October 15, 2010.  Trial is set for February 22, 2011.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff is incarcerated at California State Prison - Corcoran ("CSPC").  He is a quadriplegic and an insulin dependent diabetic.  He generally alleges that he is a victim of abuse, negligence and retaliation.

---

[2] Plaintiff has filed individual complaints against Defendants Garcia and Sena.

2

As to the nurse defendants, Plaintiff alleges that Nurse Garza has "threatened Plaintiff with retaliation by her husband, who is a correctional officer, for filing complaints" and "violated Plaintiff's constitutionally protected right to confidential communications with his attorney by reading mail between Plaintiff and his attorney and other protected documents." Complaint ¶¶ 77-78.

On or about November 4, 2007, Nurse Nacar "abused and battered Plaintiff when she simulated letting him fall, and then catching him." Complaint ¶ 95. On an unidentified date during catheterization, Nurse Nacar "broke the sterile field but continued to use the contaminated equipment." When Plaintiff objected, Nurse Nacar jerked the catheter from Plaintiff's urethra. Complaint ¶ 96.

On or about November 7, 2007, Nurse Vargas "assaulted Mr. Martinez by making a death threat against him" as "retaliation for Plaintiff asserting his rights." Nurse Vargas further retaliated by filing charges against him that resulted in a disciplinary proceeding. Complaint ¶ 94.

On November 17, 2007, Nurse Smith "pushed Plaintiff back into his chair by pushing on the front of his throat with the intent to cause harm" to retaliate against Plaintiff "for his complaint over Smith twisting Plaintiff's head during an attempt to reposition him." Complaint ¶ 100.

On or about November 21, 2007, Nurse Van Natta intentionally left Plaintiff "in a position on his back known to [Van Natta] to be painful to Plaintiff and to cause difficulty breathing" to retaliate against Plaintiff for "complaints about the care he was receiving." Complaint ¶ 97.

On unidentified dates, non-defendant Nurse Brewer "has denied Plaintiff access to medical care to address episodes of autonomic dysreflexia, removed his call button from him, refused to provide blood sugar checks, or to catheterize him." Complaint ¶ 101.

On two unspecified occasions, an unidentified nurse "put a pillow case over Plaintiff's head during treatment to punish him." Complaint ¶ 79.

Based on these and other allegations asserted generally against Defendants, Plaintiff

3

brings causes of action for (1) violation of his Eighth Amendment "rights to be free from cruel and unusual punishment in the form of Defendants' deliberate indifference to Plaintiff's personal health and safety" under 42 U.S.C. § 1983; (2) abuse of dependent adult under California Welfare & Institutions Code §§ 15600 *et seq*.; (3) medical negligence against unidentified health care providers; (4) retaliation "to discourage or prevent Plaintiff from taking part in the lawful exercise of his rights or benefitting therefrom;" (5) intentional infliction of emotional distress; (6) assault against Nurse Vargas; and (7) battery against Nurses Garza, Nacar, Smith and Van Natta.

Plaintiff seeks damages, medical expenses, punitive damages and attorney fees.

## UNDISPUTED MATERIAL FACTS[3]

1. Martinez is a prisoner at CSP-Corcoran, serving a sentence of 150 years to life following convictions on two multiple counts of rape, forcible oral copulation, and penetration with a foreign object. Joint Statement of Undisputed Facts ("JSUF") 1.
2. In February 2001, at Centinela State Prison, inmates attacked Martinez and rendered him a tetraplegic. JSUF 2.
3. Approximately a year and a half later, at California Institution for Men, Martinez developed a severe pressure sore that required several surgeries. JSUF 3.
4. Martinez filed two lawsuits in State court–one for the attack leaving him a tetraplegic, and the other for his pressure sore–which he settled with CDCR for $750,000. JSUF 4.
5. In January 2003, Martinez was transferred to CSP-Corcoran, where he has been housed in the Acute Care Hospital since then. JSUF 5.
6. In May 2008, Martinez filed an amended complaint in Case 1:07-cv-996, against seventeen individual defendants, including the five Defendants in this case, alleging dozens of federal and state claims arising since his confinement at CSP-Corcoran.
7. The claims Martinez asserted against the five nurses in this case are the same claims he asserted against them in Case 1:07-cv-996. JSUF 24.
8. Among defendants' Rule 26 disclosures in case 07-996, was the memorandum dated

---

[3] Plaintiff objected to many facts in his opposition as irrelevant, but did not dispute them. Unless otherwise stated, Plaintiff's objections on the basis of relevance are OVERRULED.

|   |   |
|---|---|
|   | November 27, 2007, concerning Martinez' care and conduct, and the two-page list of signatures, dated November 19, 2007 (hereinafter "memorandum"). JSUF 25. |
| 9. | In case 1:07-cv-996, Martinez moved for leave to take sixteen depositions beyond the ten allowed under Federal Rule of Civil Procedure 30(a)(2)(A). JSUF 26. |
| 10. | Martinez supported his application for additional depositions by referencing the memorandum signed by the nurses concerning his health care, and stating that each nurse who signed the memorandum is a potential witness and defendant. JSUF 27. |
| 11. | In Case 1:07-cv-996, Martinez took the depositions of: Warden Adams, Nurse Barrera, Correctional Officer Bradley, Nurse Brewer, Nurse Childress, Nurse Cole, Social Worker DeLeon, Correctional Officer Garcia, Nurse Garza, CDCR Ombudsman Jackson, Supervising Nurse Lau, Nurse Nacar, Physician/Surgeon Neubarth, Correctional Officer Sena, Nurse Smith, Nurse Van Natta, Nurse Vargas, Associate Warden for Health Care Santoro, Acting Director of Nursing Schaper, and Acting Health Care Manager Schutt. JSUF 29. |
| 12. | In addition to taking twenty depositions of nursing and custodial staff at CSP-Corcoran, Martinez propounded many sets of written discovery requests to the State and the individual defendants. JSUF 30. |
| 13. | In Case 1:07-cv-996, after the parties had conducted discovery for nearly a year, defendants moved to dismiss misjoined defendants. JSUF 32. |
| 14. | In opposing the motion to dismiss misjoined defendants in Case 1:07-cv-996, Martinez referenced only the memorandum of November 27, 2007, as "evidence of collusion among them to undermine Plaintiff's care . . . ." Martinez v. State of California, 1:07cv0996 DLB; Doc. 136, p. 8. |
| 15. | As a result of motions to dismiss for misjoinder and failure to exhaust administrative remedies, Martinez stipulated to dismissal of all claims, except those against the State and three individuals. |
| 16. | As a patient in the Acute Care Hospital, Martinez was repeatedly admonished and disciplined for his disdain and verbal abuse of custodial and medical staff, including |

|   |     |   |
|---|-----|---|
| 1 |     | threats of legal action and loss of job.[4]  Defendants' Exhibits ("Defs.' Ex.") 3-30 |
| 2 |     | (Informational Complaints, Rules Violation Reports); Declaration of Mary Kimbrell |
| 3 |     | ("Kimbrell Dec."). |
| 4 | 17. | Martinez's repeated threats of legal action for financial gain, were among the reasons that |
| 5 |     | Charles Scott, M.D., Professor of Clinical Psychiatry at UC Davis Medical Center, |
| 6 |     | concluded that Martinez was malingering his symptoms of depression.  Defs.' Ex. 35 |
| 7 |     | (Psychiatric Evaluation), pp. 22-24. |
| 8 | 18. | In November 2007, over forty nurses signed a memorandum concerning Martinez, in |
| 9 |     | which they complained of his demands and his verbal abuse.  Defs.' Ex. 32. |

**DISPUTED FACTS**

1. Nurse Garza never conspired with anyone to undermine Martinez's care or to retaliate against him.  Declaration of Frances Garza ("Garza Dec.") ¶ 21.
2. Garza is not aware of any attempt by anyone to undermine Martinez's care.  Garza Dec. ¶ 22.
3. Nurse Nacar's signing of the memorandum, dated November 27, 2007, had no effect on the care she gave to Martinez.  Declaration of Catherine Nacar ("Nacar Dec.") ¶¶ 17-19.
4. Nacar is not aware of any attempt by anyone to undermine Martinez's care.  Nacar Dec. ¶ 21.
5. Nurse Smith's signing of the memorandum, dated November 27, 2007, had no effect on the care he gave to Martinez.  Declaration of Mike Smith ("Smith Dec.") ¶¶ 9-11.
6. Nurse Smith never conspired with anyone to undermine Martinez's care or to retaliate against him.  Smith Dec. ¶ 12.
7. Smith is not aware of any attempt by anyone to undermine Martinez's care.  Smith Dec. ¶ 13.
8. Nurse Van Natta never conspired with anyone to undermine Martinez's care or to retaliate against him.  Declaration of Michael Van Natta ("Van Natta Dec.") ¶ 8.

---

[4]Plaintiff objects to facts 16-18, and attempts to dispute them.  However, the evidence submitted by Plaintiff in response to each of these facts does not demonstrate an actual dispute.

9.  Van Natta is not aware of any attempt by anyone to undermine Martinez's care. Van Natta Dec. ¶ 9.

10. Nurse Vargas' signing of the memorandum, dated November 27, 2007, had no effect on the care she gave to Martinez. Declaration of Emily Vargas ("Vargas Dec.") ¶¶ 15-16.

11. Nurse Vargas never conspired with anyone to undermine Martinez's care or to retaliate against him. Vargas Dec. ¶ 17.

12. Vargas is not aware of any attempt by anyone to undermine Martinez's care. Vargas Dec. ¶ 18.

13. According to David Kilmer, Professor and Chair, Department of Physical Medicine and Rehabilitation, at UC Davis Medical Center, the care given to Martinez at the Acute Care Hospital was "well within the standard of care for a person with tetraplegia." Defs' Ex. 34, p. 2.

### Plaintiff's Separate Statement of Facts[5]

14. Mr. Martinez is subjected to delays in consults and treatment. Pl.'s Ex. 1 (Report of David R. Patterson, M.D.).

15. Poor medical care affects Mr. Martinez's longevity. Pl.'s Ex. 1.

16. Mr. Martinez's bladder care is sub-optimal. Pl.'s Ex. 1.

17. Mr. Martinez is exposed to high episodes of autonomic dysreflexia that are not properly treated. Pl.'s Ex. 1.

18. Poor treatment of autonomic dysreflexia exposes Mr. Martinez to hemorrhagic stroke. Pl.'s Ex. 1.

19. The care plans do not address the consequences of high rates of exposure to autonomic dysreflexia. Pl.'s Ex. 1.

20. The care plan does not adequately address Mr. Martinez's bowel program. Pl.'s Ex. 1.

---

[5] Defendants disputed and responded to Plaintiff's separate statement in their briefing. Defendants argue that Plaintiff's separate facts are irrelevant to the issue of collusion because they relate to his medical care and not a conspiracy. Specifically, Defendants argue that the reports and declarations of Dr. Patterson, Dr. Smith, and Nurse Ashford, along with Plaintiff's own declaration and supporting documents, concern alleged deficiencies in Plaintiff's medical care, not evidence of collusion. The Court agrees. Defendants admit that given the report of their own expert, the issue of "whether Martinez received adequate care is subject to dispute." Reply, p. 7.

21. Neglect by nurses triggers the symptoms of post-traumatic stress disorder in Mr. Martinez. Pl.'s Ex. 2, Declaration of David R. Patterson, M.D., ("Patterson Dec.") ¶ 8.

22. Defendants' claims of threats by Mr. Martinez are the normal reaction for a person in his condition to confrontational care provided by Defendants. Pl.'s Ex. 2, Patterson Dec. ¶¶ 9-11.

23. Mr. Martinez suffers from post-traumatic stress disorder. Pl.'s Ex. 3 (Forensic Psychiatric Report by Clark E. Smith, M.D.).

24. Paralyzed persons require recognition of their feelings of hopelessness from their care givers. Pl.'s Ex. 3.

25. Mr. Martinez's fears of neglect and abuse are justified. Pl.'s Ex. 3.

26. Neglectful care by Defendants and other caregivers causes overwhelming feelings of fear and panic which are symptoms of PTSD. Pl.'s Ex. 3.

27. Mr. Martinez has legitimate cause to fear for his safety. Pl.'s Ex. 4 (Declaration of Clark E. Smith, M.D. ("Smith Dec.") ¶ 7).

28. After being allowed to fall on his head, Mr. Martinez refused treatment from certain nurses. When the nurses disregarded Mr. Martinez's rights, he became understandably frustrated. Smith Dec. ¶ 7.

29. Defendants' neglect and abuse causes Mr. Martinez to experience overwhelming feelings of fear and panic. Smith Dec. ¶¶ 8-9.

30. The behavior by Mr. Martinez that Defendants appear to be relying on to avoid accountability for their own behavior is an understandable reflection of the desperate and difficult circumstances of Mr. Martinez's existence, as an emotionally traumatized victim of quadriplegia. Smith Dec. ¶ 10.

31. Mr. Martinez has been subjected to repeated delays of needed medical treatment. Pl.'s Ex. 5 (Declaration of Legal Nurse Consultant Deanna Ashford, R.N. ("Ashford Dec.") ¶¶ 20, 21, 34, 38.).

32. Mr. Martinez is denied a tilt table (standing frame) to his detriment. Ashford Dec. ¶ 41.

33. The denial of the tilt table was retaliation against Mr. Martinez for falling off of a

| | | |
|---|---|---|
|1| |commode.  Pl.'s Exs. 10, 13 (Plaintiff's inmate appeals).|
|2|34.|The lack of good nursing undermines Mr. Martinez's care and prevents patient|
|3| |cooperation.  Ashford Dec. ¶ 52.|
|4|35.|The Acute Care Hospital at Corcoran State Prison is not equipped to provide for Mr.|
|5| |Martinez.  Ashford Dec. ¶ 53.|
|6|36.|Medical staff do not believe that Mr. Martinez deserves medical care.  Declaration of|
|7| |Steven C. Martinez ("Martinez Dec.") ¶¶ 5-7.|
|8|37.|Mr. Martinez has educated himself well about his medical condition.  Ashford Dec. ¶¶|
|9| |22, 25.|
|10|38.|Nurses retaliate against Mr. Martinez by making false or exaggerated claims about him to|
|11| |cast him in a bad light to authorities that can help him.  Martinez Dec. ¶ 11.|

## **LEGAL STANDARD**

"The standards and procedures for granting partial summary judgment, also known as summary adjudication, are the same as those for summary judgment."  Mora v. Chem-Tronics, Inc., 16 F.Supp.2d 1192, 1200 (S.D.Cal. 1998).  Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party.  Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must

1  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
2  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
3  Elec. Serv., 809 F.2d at 630, and that the dispute is genuine, i.e., the evidence is such that a
4  reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,
5  818 F.2d 1433, 1436 (9th Cir. 1987).

6       In the endeavor to establish the existence of a factual dispute, the opposing party need not
7  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
8  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
9  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
10 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
11 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
12 amendments).

13      In resolving the summary judgment motion, the court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
15 any.  Rule 56 (c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
16 255, and all reasonable inferences that may be drawn from the facts placed before the court must
17 be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.
18 Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out
19 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
20 inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
21 Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

22      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

26      **DISCUSSION**
27 A.    Defendants' Motion for Summary Adjudication
28      The Court previously declined to sever Plaintiff's claims against the nurse defendants in

part because Plaintiff alleged that they had colluded to deprive him of medical care. As such, Defendants seek summary adjudication on the issue of whether they conspired to undermine Plaintiff's health care.

Under California law, "[c]ivil conspiracy is not an independent tort." Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1196-97 (C.D.Cal. 2001) (internal quotations and citations omitted). "[I]t is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Id. at 1197. "[A] claim of civil conspiracy requires the allegation that a group of two or more persons agreed to a common plan or design to commit a tortious act." Id. "[T]he alleged object of the conspiracy must be an independently tortious act, one which on its own provides a cause of action to a plaintiff." Id.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Here, Plaintiff does not assert a stand-alone conspiracy claim.[6] Instead, Plaintiff generally alleges that Defendants "have, and continue to, conspire to undermine his health and safety as hereafter more fully appears." Complaint ¶ 90. Although Plaintiff has not asserted a separate conspiracy claim, the Court addresses the merits of Defendants' summary adjudication motion.

---

[6] At the conclusion of his opposition, Plaintiff "seeks leave to amend the complaint to add the conspiracy cause of action which was inadvertently not included." Opposition, p. 11. While leave to amend is liberally granted under Fed. R. Civ. P. 15(a), undue delay, bad faith, prejudice to the opponent and futility of amendment are grounds for denial. Loehr v. Ventura County Cmty. Coll. Dist., 743 F.2d 1310, 1319 (9th Cir. 1984). Here, Plaintiff provides no basis for granting the requested relief. Additionally, Plaintiff may not add a claim to avoid the possibility of an adverse summary adjudication ruling. See, e.g., Acri v. International Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986). Plaintiff's request to amend is DENIED.

1     Defendants rely on their denials as undisputed evidence that they neither conspired to

2 undermine Plaintiff's care nor were aware of any attempt by anyone to undermine his care.

3 Plaintiff counters that Defendants' denials are not sufficient to eliminate an inference of

4 collusion. To support this, Plaintiff directs the Court to the November 2007 memorandum

5 signed by over forty nurses. Opposition, p. 6; Defs.' Ex. 32.

6     In relevant part, the memorandum states:

> Through the last four years, the physical and psychological stress on CSP-COR staff has increased due to the extra care privileges and treatment he receives, such as:
> 1. Pressure relief every thirty minutes . . .
> 2. Daily baths. . .
> 3. In and out cath . . .
> 4. Letting him choose when his care will be performed . . .
>
> I/M Martinez has been without consequences for his actions too long. It is time that all special and unnecessary treatments be stopped immediately. It is unethical and irresponsible to have allowed the many special and far-reaching treatments to have gone on for so many years. No society in the world should allow this kind of treatment to continue. No prisoner in the state, country, or world should ever receive the special treatment this I/M receives . . .
> This I/M should be transferred from this institution immediately, especially since there is no reason to have him housed at an acute-care hospital.

Defs.' Ex. 32, p. 1. Plaintiff posits that a jury "will understand that any nurse who would sign such a document is motivated to take matters into his or her own hands and create 'consequences for [Mr. Martinez's] actions' by depriving him of medical treatment they resent providing." Opposition, p. 8.

    Defendants argue that the memorandum is not evidence of a conspiracy to undermine Martinez's medical treatment because (1) only three of the five nurse defendants signed the memorandum; and (2) there is no language in the memorandum that shows a conspiracy.

    As to the first reason, Defendants are correct that Defendants Nacar, Smith and Vargas signed the memorandum, but Defendants Garza and Van Natta did not. Defs' Ex. 32, p. 2. Plaintiff counters that the memorandum creates an inference that the attitude toward his care permeated the Acute Care Hospital because many nurses who never treated him signed it.[7] Schutt Dep. 93:20-24. He argues that the fact that some nurses did not sign it is "not necessarily

---

[7] As a side argument, Plaintiff asserts that supervisory staff should be joined in this lawsuit. Plaintiff has not filed a motion for joinder or consolidation with Martinez v. Adams, et al., 1:09cv2119 LJO DLB.

12

evidence that they disagreed with the conspiracy." Opposition, p. 8. At this stage of the proceedings, however, there is insufficient factual evidence presented regarding the non-signing nurse defendants, including whether they worked shifts in conjunction with the signing defendants or whether they were contacted to sign the memorandum. There is also insufficient information regarding the circumstances surrounding the actual signing of the memorandum. Although Defendants argue that further discovery will not yield any evidence to support Plaintiff's claim, discovery has not closed in this action.

As to the second reason, Defendants assert that the memorandum is not an agreement to do anything. Instead, it merely expresses objections to treatment that the nurses believed went beyond the standard of care, and requested that Martinez be sent to another institution. Defendants claim that the deposition of Cheryl Schutt demonstrates that the nurses signed the memorandum "not to enter into a conspiracy to deprive Martinez of required medical treatment, but to create a better environment for providing such care." Reply, p. 7. Ms. Schutt testified that the nurses

> expressed concern that even when they tried to follow his care plan that they were not permitted to provide the care because of his - either his demeanor towards the nurses or he would criticize how they were providing that care. And it was very difficult for them to continue to go into the room and suffer verbal abuse when they were trying to provide him the care that was ordered.

Pl's Ex. 6, 98:9-25. According to Defendants, "[o]ne might argue that the nurses who signed the memorandum acted in concert to object to Martinez's care and seek his transfer to another institution," but this does not qualify as a conspiracy because the goal was not unlawful. Motion, p. 7.

Defendants have impliedly conceded that there are inferences that may be drawn from the signing of the memorandum. The memorandum expressly describes certain aspects of Martinez' care as "unnecessary" or "extra" and calls for the "special treatment" to stop immediately. One might argue, as Plaintiff does, that the nurses who signed the memorandum acted in concert to retaliate against Martinez or, at a minimum, to otherwise interfere with his care. The Court finds that there is a dispute of material fact regarding the issue of collusion. This is particularly true given that discovery in this action has not been completed. Therefore, the Court recommends

1  that Defendants' motion for summary adjudication be DENIED.

2  B.     RENEWED MOTION TO SEVER THE INDIVIDUAL DEFENDANTS

3          As noted, Defendants previously sought to sever the claims of the individual nurses. The
4  Court denied the motion, reasoning that Defendants would be better suited to defend a collusion
5  claim jointly.  Defendants now renew their motion to sever, contending that if the Court grants
6  summary adjudication on the collusion issue, then it should dismiss the misjoined defendants.

7          Here, the Court is not recommending that summary adjudication be granted.  Moreover,
8  the Court's previous ruling regarding severance of the individual nurse defendants was not
9  limited to whether or not the collusion allegation survives.  As Plaintiff points out, the Court
10 determined that joinder of the nurse defendants promotes economy of resources, especially if
11 Plaintiff's claims are disposed of by summary judgment.  Order, p. 24; Coughlin v. Rogers, 130
12 F.3d 1348, 1351 (9th Cir. 1997) (permissive joinder of defendants is designed to promote judicial
13 economy, and reduce inconvenience, delay and added expense).  At this point, discovery is not
14 complete and dispositive motions have not been filed on Plaintiff's causes of action against the
15 individual nurse defendant.  Until such time, it is premature to revisit the issue of severance and
16 to address whether the test for permissive joinder is, or is not, satisfied.  Id. at 1350 ("if the test
17 for permissive joinder is not satisfied, a court in its discretion, may sever the misjoined parties,
18 so long as no substantial right will be prejudiced by the severance").

19         Accordingly, Defendants' renewed motion to dismiss misjoined defendants is DENIED
20 WITHOUT PREJUDICE.

### Conclusions and Recommendation

22     Based on the above, Defendants' renewed motion to dismiss misjoined defendants is
23 DENIED WITHOUT PREJUDICE.

24         Additionally, the Court RECOMMENDS that Defendants' motion for summary
25 adjudication on the issue of whether any Defendants conspired to undermine Plaintiff's health
26 care treatment be DENIED.

27         This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,
28 United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and

Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen (14) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **July 13, 2010**            **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE