1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

STEVEN C. MARTINEZ,                    )    1:09cv0899 LJO DLB
                                       )
                                       )
                                       )    FINDINGS AND RECOMMENDATIONS
              Plaintiff,               )    REGARDING DEFENDANTS' MOTION TO
                                       )    DISMISS AND DEFENDANTS' MOTION FOR
      v.                               )    SUMMARY JUDGMENT
                                       )
FRANCES GARZA, et al.,                 )    (Document 54)
                                       )
                                       )
                                       )
              Defendants.              )
_____       )

      On October 11, 2010, Defendants Frances Garza, Emily Vargas, Catherine Nacar,

Michael Van Natta, and Mark Smith ("Defendants") filed the instant motion to dismiss and the

instant motion for summary judgment.  The motions were referred to this Court pursuant to 28

U.S.C. § 636(b)(1) and Local Rule 302.  The Court deemed the matter suitable for decision

without oral argument pursuant to Local Rule 230(g) and vacated the November 19, 2010

hearing.

## BACKGROUND

      Plaintiff Steven Martinez ("Plaintiff" or "Martinez") filed this civil rights action on May

21, 2009, against Defendants Derral G. Adams, William J. McGuinness, M.D., Frances Garza,

Emily Vargas, Catherine Nacar, Michael Van Natta, Mike Smith, Cornelio Garcia and Paul

1

1   Sena.[1]

2

3        On March 9, 2010, the Court dismissed with prejudice the claims against Defendants

4   Adams and McGuinness and severed and dismissed without prejudice the claims against

5   Defendants Cornelio Garcia and Paul Sena.[2]  The Court ordered the matter to proceed with

6   Plaintiff's claims against Defendants Garza, Vargas, Nacar, Van Natta and Smith ("nurse

7   defendants").

8        On March 16, 2010, the nurse defendants filed an answer to the complaint.

9        On August 11, 2010, the Court denied the nurse defendants' motion for summary

10  adjudication on the issue of whether they conspired to undermine Plaintiff's health care

11  treatment.

12       On October 11, 2010, Defendants filed the instant motion to dismiss certain claims for

13  failure to exhaust administrative remedies combined with a motion for summary judgment.

14  Plaintiff filed an opposition on November 5, 2010, and Defendants filed a reply.[3]

15       On November 10, 2010, the Court dismissed Plaintiff's cause of action for retaliation

16  against Defendants Vargas, Nacar, Van Natta and Smith for failure to exhaust administrative

17  remedies.

18       Trial was scheduled for February 22, 2011, but the Court vacated the trial date pending

19  resolution of the instant motions.

20                      **FACTUAL ALLEGATIONS IN THE COMPLAINT**

21       Plaintiff is incarcerated at California State Prison - Corcoran ("CSPC").  He is a

22  _____

23       [1]Plaintiff pursued virtually identical claims against these Defendants in *Martinez v. Adams, et al.*, Case No.
    1:07cv0996 DLB.  The parties stipulated to dismiss certain claims/parties without prejudice.

24       [2]Plaintiff filed separate complaints against Defendants Garcia and Sena.

25       [3]The parties have filed numerous objections to the evidence submitted by the opposing side.  The Court has
26  not relied on any of the disputed evidence to grant or to deny summary judgment.  To the extent that the Court may
    have considered some of the disputed evidence to determine if triable issues exist regarding the claims, the
27  objections are OVERRULED.  Additionally, the Court is not obligated to consider matters not specifically brought
    to its attention.  Thus, it is immaterial that helpful evidence may be located somewhere in the record.  The motion
28  and opposition must designate and reference specific triable facts.  Carmen v. San Francisco Unified School Dist.,
    237 F.3d 1026, 1029 (9th Cir. 2001).

quadriplegic and an insulin dependent diabetic.  He generally alleges that he is a victim of abuse, negligence and retaliation.

As to the nurse defendants, Plaintiff alleges that Nurse Garza has "threatened Plaintiff with retaliation by her husband, who is a correctional officer, for filing complaints" and "violated Plaintiff's constitutionally protected right to confidential communications with his attorney by reading mail between Plaintiff and his attorney and other protected documents."  Complaint ¶¶ 77-78.

On or about November 4, 2007, Nurse Nacar "abused and battered Plaintiff when she simulated letting him fall, and then catching him."  Complaint ¶ 95.  On an unidentified date during catheterization, Nurse Nacar "broke the sterile field but continued to use the contaminated equipment."  When Plaintiff objected, Nurse Nacar jerked the catheter from Plaintiff's urethra. Complaint ¶ 96.

On or about November 7, 2007, Nurse Vargas "assaulted Mr. Martinez by making a death threat against him" as "retaliation for Plaintiff asserting his rights."  Nurse Vargas further retaliated by filing charges against him that resulted in a disciplinary proceeding.  Complaint ¶ 94.

On November 17, 2007, Nurse Smith "pushed Plaintiff back into his chair by pushing on the front of his throat with the intent to cause harm" to retaliate against Plaintiff "for his complaint over Smith twisting Plaintiff's head during an attempt to reposition him."  Complaint ¶ 100.

On or about November 21, 2007, Nurse Van Natta intentionally left Plaintiff "in a position on his back known to [Van Natta] to be painful to Plaintiff and to cause difficulty breathing" to retaliate against Plaintiff for "complaints about the care he was receiving." Complaint ¶ 97.

On unidentified dates, non-defendant Nurse Brewer "has denied Plaintiff access to medical care to address episodes of autonomic dysreflexia, removed his call button from him, refused to provide blood sugar checks, or to catheterize him."  Complaint ¶ 101.

On two unspecified occasions, an unidentified nurse "put a pillow case over Plaintiff's

1  head during treatment to punish him."  Complaint ¶ 79.

2         Based on these allegations, Plaintiff brings causes of action for (1) violation of his Eighth

3  Amendment "rights to be free from cruel and unusual punishment in the form of Defendants'

4  deliberate indifference to Plaintiff's personal health and safety;" (2) abuse of dependent adult

5  under California Welfare & Institutions Code §§ 15600 *et seq.*; (3) medical negligence against

6  unidentified health care providers; (4) retaliation against Nurse Garza; (5) intentional infliction of

7  emotional distress; (6) assault against Nurse Vargas; and (7) battery against Nurses Garza, Nacar,

8  Smith and Van Natta.

9         Plaintiff seeks damages, medical expenses, punitive damages and attorney fees.

10                                      **DISCUSSION**

11 **I.     Undisputed Facts**[4]

12 1.    Martinez is a prisoner at CSP-Corcoran, serving a sentence of 150 years to life following

13       convictions on two multiple counts of rape, forcible oral copulation, and penetration with

14       a foreign object. Joint Statement of Undisputed Facts ("JSUF") 1.

15 2.    In February 2001, at Centinela State Prison, inmates attacked Martinez, leaving him a

16       tetraplegic with no ability to voluntarily move his arms or legs, and without control of his

17       bowel or bladder functions.  JSUF 2.

18 3.    Approximately a year and a half later, at California Institution for Men, Martinez

19       developed a severe pressure sore that required several surgeries.  JSUF 3.

20 4.    Martinez filed two lawsuits in State court–one for the attack leaving him a tetraplegic,

21       and the other for his pressure sore–which he settled with CDCR for $750,000.  JSUF 4.

22 5.    In January 2003, Martinez was transferred to CSP-Corcoran, where he has been housed in

23       the Acute Care Hospital.  JSUF 5.

24 6.    Garza began working at CSP-Corcoran as a licensed vocational nurse in December 2003,

25       and was Martinez's full time nurse from March 2003 to November 2006.

26 7.    During this time, she and another nurse assigned to Martinez each took a twelve-hour

27 ───────────────────

28       [4]Although the parties filed a joint statement identifying certain stipulated facts, Plaintiff objected to many these same facts in his opposition.

shift to provide round-the-clock care for Martinez.

8.    In caring for Martinez, Garza sometimes had to move Martinez from his bed to a chair, commode, or tilt table.  JSUF 16.

9.    When Garza cared for Martinez, he weighed over 200 pounds, and she weighed approximately 125 pounds.  JSUF 17.

10.   Occasionally, Martinez accidently had a bowel movement in his bed, soiling himself. JSUF 22.

11.   At 6:30 p.m., shortly after the beginning of the next shift on September 22, 2006, the assigned night nurse, while doing range of motion exercises, found that Martinez had soiled himself with a small dried amount of fecal matter, and cleaned him at once.

12.   Since 2006, Vargas has been employed by CDCR as a registered nurse in the Acute Care Hospital at CSP–Corcoran.  JSUF 39.

13.   Since November 2007, Vargas worked in unit A; before then, she worked in unit B, where she had occasion to assist in caring for Martinez.  JSUF 40.

14.   On November 7, 2007, Vargas gave Martinez his range of motion exercises at 8:30 a.m.

15.   While providing the range of motion exercises, Martinez insisted that Vargas move his leg farther than she was moving it.

16.   Since 2006, Nacar has been employed by CDCR as a registered nurse in the Acute Care Hospital at CSP–Corcoran.  JSUF 50.

17.   Since November 2007, Nacar has worked in unit A; before then, she worked in unit B, where she cared for Martinez on a few occasions.  JSUF 51.

18.   The care Nacar and other nurses gave to Martinez was governed by a care plan.  JSUF 52.

19.   On June 14, 2006, at 6:45 p.m., Nacar took over Martinez' care when he was in his bed waiting for catheterization.

20.   Because Martinez's bladder is dysfunctional, he needs to have his bladder emptied periodically with an intermittent (or "in-and-out") catheter—a tube that is inserted through his penis into his bladder.  JSUF 58.

21.   After completing the intermittent catheterization, Nacar placed a condom catheter on

Martinez to prevent any urine from leaking until his next intermittent catheterization.

22. On November 7, 2007, Nacar entered Martinez's cell to assist Nurse Ramos with Martinez's care.

23. Dr. Neubarth ordered a colonoscopy for Martinez that was scheduled for March 26, 2008.  JSUF 78.

24. Dr. Neubarth's order did not call for an enema to be given to Martinez.

25. The Nursing Care Records do not have any entry indicating that, on March 25, 2008, Martinez requested an enema from Nacar.

26. Since February 2008, Van Natta has been employed by CDCR as an LVN at CSP–Corcoran.  JSUF 85.

27. From November 2007 to February 2008, Van Natta worked at CSP-Corcoran in unit B of the Acute Care Hospital as a contract LVN.  JSUF 86.

28. Upon becoming a State employee in February 2008, Van Natta was reassigned from the Acute Care Hospital to work as a relief LVN on the yards.

29. In the three months Van Natta worked in unit B of the Acute Care Hospital— November 2007 to February 2008—he was assigned full-time to Martinez.  JSUF 88.

30. Typically, when a nurse is assigned full-time to care for a patient in the Acute Care Hospital, the nurse is given an orientation by another nurse, who is more experienced in the care of the patient, the orientation consists of observing and assisting the more experienced nurse perform the required tasks for a few days before the newly assigned nurse performs the tasks alone.  JSUF 89.

31. For the first few days of Van Natta's orientation with Martinez, Van Natta mainly observed the nurse providing his care.  JSUF 91.

32. On November 9, 2007, Van Natta assisted in transferring Martinez from this chair to his bed, and then to his tilt table, and then back to his chair; and Van Natta assisted in giving Martinez pressure relief.  JSUF 92.

33. On November 13, 2007, Van Natta told Martinez that he had cleaned him according to the instructions he had been given.

34.   Van Natta had no part in the decision to discontinue use of the tilt table or Martinez's commode chair.

35.   Van Natta advised Martinez that a new chair had been ordered for him and, until it arrived, Martinez used a bed pan for his bowel movements.

36.   Van Natta always adhered to Martinez's daily care plan.[5]

37.   Smith is employed by CDCR as a registered nurse at CSP–Corcoran.  JSUF 104.

38.   Smith began working at CSP-Corcoran in its Acute Care Hospital in April 2006.  JSUF 105.

39.   Smith has always been assigned to unit A of the Acute Care Hospital, but he has worked in unit B at times to fill in as a floating nurse.  JSUF 106.

40.   On a half dozen or so occasions, Smith assisted in caring for Martinez by helping to turn him, put him in a chair, or move him.  JSUF 107.

II.   **Motion to Dismiss**

A.      **Legal Standard - Failure to Exhaust Administrative Remedies**

Defendants argue that Plaintiff failed to exhaust certain "claims" in compliance with 42 U.S.C. § 1997e(a) and state law, subjecting those claims to dismissal.  Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

The California Department of Corrections and Rehabilitation has an administrative

---

[5] Plaintiff neither lodged an objection nor provided evidence of a dispute regarding this fact.  *See* Statement of Genuine Issues in Opposition to Motion for Summary Judgment, Fact 102, p. 30.

grievance system for prisoner complaints.  Cal. Code Regs., tit. 15 § 3084.1 (West 2010).  The process is initiated by submitting a CDCR Form 602.  Id. at § 3084.2(a).  Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level."  Id. at § 3084.5.  Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level.  Id. at §§ 3084.5, 3084.6(c).  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney, 311 F.3d at 1199-1201.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  Jones, 127 S.Ct. at 921; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  Id.

Under California law, the "exhaustion of administrative remedies" rule "is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act."  Abelleira v. District Court of Appeal, Third Dist., 17 Cal.2d 280, 292, 109 P.2d 942 (1941).  "If an administrative remedy is provided by statute, a litigant must ordinarily show that he has invoked and exhausted the remedy before resorting to the judicial process."  Myers v. Mobil Oil Corp., 172 Cal.App.3d 1059, 1063, 218 Cal.Rptr. 630 (1985).  "Exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts."  Myers, 172 Cal.App.3d at 1063, 218 Cal.Rptr. 630.  "The requirement that administrative remedies be exhausted 'applies to grievances lodged by prisoners.'"  In re Dexter,

1   25 Cal.3d 921, 925, 160 Cal.Rptr. 118 (1978). "Under state law, inmates are required to exhaust

2   administrative remedies, even when seeking money damages unavailable in the administrative

3   process." Wright v. State, 122 Cal.App.4th 659, 666, 668, 19 Cal.Rptr.3d 92 (2004) (the PLRA

4   exhaustion requirement "parallels the exhaustion requirement under state law").

5       **B.    Analysis**

6       Defendants contend that the PLRA and state exhaustion requirements serve "similar

7   interests" and, under principles of comity, the Court should apply state law exhaustion

8   requirements. Defendants argue that any claim Plaintiff asserts in this action is barred if it is not

9   one of the 33 appeals exhausted before May 21, 2009. Defendants indicate that of these 33, only

10  seven relate to claims against Defendants. Defendants characterize these appeals as follows:[6]

11          nurse Garza allowed him to remain in his feces (Ex. E 7, Appeal 06-4009) and
            abused him (Ex. E 9, Appeal 06-4317); nurse Vargas threatened him (Ex. E 17,
12          Appeal 07-5649); nurses Smith and Van Natta abused and neglected him on
            different occasions (Ex. E 19, Appeal 07-5647; Ex. E 21, Appeal 08-112); and
13          nurse Nacar pretended to let Plaintiff fall (Ex. E 23, Appeal 07-5519) and refused
            his request for an enema (Ex. E 25, Appeal 08-2440).

14
15      Defendants assert that in addition to the claims reflected in the seven appeals, Martinez

16  alleged many other claims against them that were not reflected in any appeal. These "claims"

17  include allegations in the complaint such as a failure to eliminate all occasions of skin

18  breakdown, allowing Martinez to fall, using equipment in an improper manner, prescribing

19  medications without regard to contraindications, not controlling Martinez's blood glucose levels,

20  failing to treat him for gastroparesis and damaging his vagus nerve, refusing to provide him with

21  a baclofen pump, and failing to control his body fluid levels. Complaint, ¶¶ 57-61, 63, 66.

22      In his opposition, Plaintiff admits that the following allegations are not relevant to this

23  action: (1) medications being prescribed without regard to contraindications; (2) failing to treat

24  Martinez for gastroparesis and damaging his vagus nerve; and (3) refusing to provide Martinez

25  with a baclofen pump to prevent spasms. Complaint, ¶¶ 59, 61, and 63. Accordingly, the Court

26

27  _____

28      [6]Defendants ask the Court to take judicial notice of the seven appeals. See Request for Judicial Notice
    (Doc. 54-18). Plaintiff has not objected.

1   finds that these "claims" were not exhausted as to the Defendants in this action.[7]

2       As to the remaining allegations, the Court questions the appropriateness of considering

3   the merits of Defendants' motion for failure to exhaust administrative remedies.  Although

4   Defendants properly raised the issue of exhaustion in a motion to dismiss, they should have done

5   so sooner and not in conjunction with their summary judgment motion.  Plaintiff has pointed out

6   the procedural history of this litigation, including that Defendants brought similar motions in

7   both the parent case and in this case.  Defendants' counsel has not addressed this issue and makes

8   no effort to explain why such a motion could not have been brought in the two previous motions

9   to dismiss that have been filed in this case.  The filing of multiple motions does not promote

10  judicial efficiency and economy.

11      Notwithstanding, the Court finds that Defendants' motion lacks merit.  The Court rejects

12  Defendants' argument that Plaintiff was required to identify each individual by name in the

13  appeal and grieve each fact at every turn in what were ongoing medical issues in order to satisfy

14  the exhaustion requirement. That level of detail simply is not required unless the prison grievance

15  process itself commands it, which it does not in California. Tit. 15, § 3084.1(a); Jones, 127 S.Ct.

16  at 923; Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.2005) (reasonable

17  modification/accommodation form did not require identification of specific individuals).

18      The format of Plaintiff's operative complaint, along with the dismissal of certain

19  defendants and claims, makes it difficult to ascertain whether the allegations at issue form the

20  basis of legal claims against each Defendant versus background facts.  It is clear, however, that

21  Plaintiff's claims arise from the following medical problems: a failure to eliminate skin

22  breakdown, allowing him to fall, using equipment in an improper manner, not controlling his

23  blood glucose levels, and failing to control his body fluid levels.

24      Appeal log number 06-4009 complains that Nurse Garza allowed Plaintiff to sit in feces,

25  which "starts a skin breakdown."  Ex. E 7.  Appeal log number 08-112 references falling and

26

27      [7]Insofar as Defendants assert that Plaintiff failed to exhaust the administrative appeals process on his claim
28  for retaliation, the Court has ruled on that issue by separate order. (Doc. 57).  The Court declines to reconsider the
    retaliation claim as to Defendants Vargas, Nacar, Van Natta and Smith.

being soaked in urine from failure to place cap on.  Ex E 21.  Appeal log number 07-5519

complains that Nurse Nacar simulated letting Plaintiff fall and yanked a catheter out of his penis.

Ex. E 23.  Appeal log number 08-2440 complains that Nurse Nacar failed to provide Plaintiff

with a fleet enema prior to colonoscopy.  Ex. E 25.  Appeal log numbers 05-03160 and 07-5092

complain about Plaintiff's blood glucose levels.  Doc. 18-1, Exs. 4 and 20.  Appeal log number

06-4313 complains about catheterizations not being done.  Doc. 18-1, Ex. 8.

The Court finds that Plaintiff's appeals are sufficient to satisfy the exhaustion requirement

in that they placed prison officials on notice as to Plaintiff's medical problems and his assertion

that he was not being properly treated by medical staff.  To the extent that any Defendant was so

minimally involved that there is no basis for liability under section 1983, summary judgment may

be used to resolve those unmeritorious claims.

## C.   Conclusion

Based on the above, the Court RECOMMENDS that Defendants' motion to dismiss for

failure to exhaust administrative remedies be DENIED.

## III.   Motion for Summary Judgment

### A.   Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317

(1986).  "If the party moving for summary judgment meets its initial burden of identifying for the

court those portions of the material on file that it believes demonstrates the absence of any

genuine issues of material fact," the burden of production shifts and "the non moving party must

set forth, by affidavit or as otherwise provided in Rule 56, '*specific* facts showing that there is a

genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e)) (emphasis added).  As to the specific facts

offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all

inferences in the light most favorable to the nonmoving party.  Id. at 630-31.

If the moving party meets its initial responsibility, the burden shifts to the opposing party

to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

1    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must

2    demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

3    suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

4    Elec. Serv., 809 F.2d at 630, and that the dispute is genuine, i.e., the evidence is such that a

5    reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,

6    818 F.2d 1433, 1436 (9th Cir. 1987).

7        In the endeavor to establish the existence of a factual dispute, the opposing party need not

8    establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10    trial." T.W. Elec. Serv., 809 F.2d at 631.

11        In resolving the summary judgment motion, the court examines the pleadings,

12    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13    any. Rule 56 (c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

14    255, and all reasonable inferences that may be drawn from the facts placed before the court must

15    be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

16    Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out

17    of the air, and it is the opposing party's obligation to produce a factual predicate from which the

18    inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

19    Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

20        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

21    show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

22    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23    'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citation omitted).

24        **B.    Analysis**

25            1.   Eighth Amendment Claim

26        Defendants contend that Martinez's cause of action for deliberate indifference fails

27    because they properly attended to his medical needs and did not intend to harm him.

28        Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the

12

prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the

1   official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting

2   Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

3           Defendants argue that they are entitled to summary judgment because they did not fail to

4   meet Martinez's medical needs.  It is Defendants' position that certain allegations against them

5   are trivial, such as Defendant Garza once reading Martinez's legal mail, Defendant Vargas

6   allegedly telling Martinez that she would see him in his grave and Defendant Nacar allegedly

7   simulating letting Martinez fall.  Complaint ¶¶ 78, 94, 95.  Defendants contend that these

8   allegations cannot support a section 1983 claim.

9           Defendants further argue that other claims by Martinez are "more than trifling," such as

10  Defendant Garza allowing Martinez to remain in his feces until it dried, Defendants Garza and

11  Van Natta letting urine spill onto Martinez, Defendant Nacar yanking a catheter out of Martinez

12  in anger and Defendant Smith pushing Martinez into his chair by his throat.  Motion, p. 9;

13  Complaint ¶¶ 56, 96, 100.  Defendants address the individual allegations and contend that

14  Martinez lacks supporting evidence or that the evidence negates the "claims."  The Court turns to

15  the individual allegations.

16                  Nurse Garza

17          In connection with the allegation that Defendant Garza allowed Martinez to remain in his

18  feces until it dried, Defendant Garza contends that she did not leave him soiled at the end of her

19  shift on September 22, 2006.  There is no dispute that shortly after the shift change, the assigned

20  night nurse found that Martinez had soiled himself with a small dried amount of fecal matter and

21  cleaned him at once.  JSUF 32.  Martinez admits he was not harmed from soiling himself.

22  Statement of Genuine Issues in Opposition to Motion for Summary Judgment ("Statement of

23  Issues") ¶ 33, p. 10.  Given Martinez's admission, the Court finds that he has not proven that

24  being left in feces for a short duration was "sufficiently harmful to evidence deliberate

25  indifference to serious medical needs."  Estelle, 429 U.S. at 106.

26          Even assuming that being left in his own feces for a short time is sufficiently harmful for

27  purposes of establishing an Eighth Amendment violation, there also is no evidence to show that

28  Defendant Garza knew of and disregarded an excessive risk to Martinez's health or safety.  On

1   the facts presented, the Court cannot conclude that Defendant Garza was aware that Martinez had

2   soiled himself to create a triable issue of material fact.  Martinez does not provide evidence that

3   Defendant Garza knew he had soiled himself and Defendant Garza denies leaving him soiled.

4   Declaration of Steven Martinez ("Martinez Dec.") ¶ 7 ("On September 22, 2006, Defendant

5   Garza failed to clean me after having an unintended bowel movement."); ¶ 35 ("On a second

6   occasion, Nurse Garza *failed to detect* and treat me after a bowel movement."); Declaration of

7   Frances Garza ("Garza Dec.") ¶ 30 ("In accordance with my custom and practice, before

8   finishing my shift at 5:45 p.m. that day, I checked Martinez for any fecal matter and found

9   none.").  Under the bare assertions presented, a reasonable juror could not conclude that

10   Martinez's medical need was so obvious that Defendant Garza should have been aware of the

11   substantial risk of injury or harm to Martinez.  Further, Defendant Garza's lack of awareness

12   undermines Plaintiff's argument that he suffered emotional distress resulting from *deliberate*

13   indifference.

14         As to Martinez's claim that Defendant Garza caused him to be splashed with urine and

15   refused to clean his bedding, the evidence demonstrates that when Defendant Garza was turning

16   Martinez to reposition him on November 3, 2006, his condom catheter became disconnected

17   from his catheter bag, resulting in a small amount of urine spilling onto him.  Garza Dec. ¶ 13;

18   Exhibit I, p. 138.  Martinez does not deny that the urine spill resulted from his condom catheter

19   being disconnected.  There also is no dispute that Defendant Garza immediately washed

20   Martinez with soap and water and changed his clothes.  Garza Dec. ¶ 32; Exhibit I, p. 138.

21   Martinez merely states: "After causing Plaintiff to be splashed with urine, Defendant refused to

22   clean Plaintiff's bedding."  Opposition, p. 5; Declaration of Steven Martinez ("Martinez Dec.") ¶

23   10.  Martinez apparently takes issue with Defendant Garza's alleged refusal to clean his bedding.

24         As a threshold matter, there is no evidence before the Court that urine spilled onto

25   Martinez's bedding in a sufficient quantity to require cleaning.  Martinez essentially asks the

26   Court to infer that when urine spilled on him, it also spilled onto his bedding.  For purposes of

27   this motion, the Court makes the inference, but considers the urine on his bedding as a sanitation

28   issue.  The Ninth Circuit has held that "subjection of a prisoner to lack of sanitation that is severe

or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1315 (9th Cir. 1995).  However, Martinez's assertion of an unsupported and unspecified amount of urine on his bedding fails to demonstrate such a severe or prolonged lack of sanitation to invoke constitutional protection.  See, e.g., Hunt v. Downing, 112 F.3d 452, 453 (10th Cir. 1997) (detainee in state juvenile facility required to sleep one night in urinated sheets did not violate Eighth Amendment).  Martinez also presents no evidence that Defendant Garza had knowledge of urine on his bedding.  Martinez declares that Defendant Garza "refused to clean" his bedding, but he provides no facts suggesting that he asked Defendant Garza to clean it or that it needed to be cleaned.  Martinez Dec. ¶ 10.

Martinez has not proffered any evidence that Defendant Garza acted with deliberate indifference during her involvement in Martinez's medical care, therefore Defendant Garza is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim against her.

Martinez's allegation that Defendant Garza read legal correspondence is not construed as an Eighth Amendment claim.  Allowing prison officials to read a prisoner's legal mail implicates the prisoner's First Amendment and Due Process rights.  Compare O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (applying First Amendment standard) with Taylor v. Sterrett, 532 F.2d 462, 475 (5th Cir. 1976) (applying access to courts Due Process analysis); see also Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974) (discussing application of First, Sixth, and Fourteenth Amendments).

Here, the parties dispute whether or not Defendant Garza read any such mail.  Statement of Issues ¶ 37, p. 12.  However, the dispute is based on Martinez's suggestion that on an unspecified occasion when he "challenged Defendant Garza for reading mail from [his] attorney, she stated that she had a right to read [his] mail if it concerned her."  Martinez Dec. ¶ 11. Martinez does not direct the Court to any factual evidence that Defendant Garza read mail between Martinez and his attorney.  Indeed, Martinez does not go so far as to declare that he witnessed Defendant Garza reading his mail, that she admitted reading his mail or that anyone witnessed her reading legal mail.  The Court does note that Martinez, in his 602 inmate appeal, claimed that he "caught [Garza] reading legal material."  Defendants' Exhibit E 7, p. 3.

1    Even if Defendant Garza once read Martinez's legal mail, however, an isolated incident

2    without evidence of interference with Martinez's right to counsel or access to the courts does not

3    give rise to a constitutional violation.  See, e.g., Smith v. Maschner, 899 F.2d 940, 944 (10th Cir.

4    1990) (isolated incident, without evidence of improper motive or resulting interference with

5    prisoner's right to counsel or to access to the courts did not give rise to a constitutional

6    violation); Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989); Armstrong v. Yates, 2010

7    WL 2773240, *6 (E.D. Cal. July 13, 2010) (isolated incidents of mail interference without any

8    evidence of improper motive or resulting interference with the right to counsel or access to the

9    courts do not give rise to a constitutional violation).  Martinez provides no evidence and makes

10   no suggestion that the alleged reading of his legal mail interfered with his right to counsel or his

11   access to the courts.  Defendant Garza is entitled to judgment as a matter of law regarding

12   Martinez's interference with legal mail claim.

13        Nurse Vargas

14        In the complaint, Martinez alleges that Defendant Vargas assaulted him by making a

15   death threat against him.  Complaint ¶ 94.  Defendants argue that an alleged threat is not

16   sufficient to support a section 1983 claim.  The Court agrees.  Verbal harassment or abuse alone

17   is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983, Oltarzewski v.

18   Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a

19   constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

20        Martinez has not raised a dispute regarding the threat allegation in his opposition.

21   Instead, the opposition includes an assertion that Defendant Vargas overextended Martinez's leg

22   when he requested that she appropriately perform range of motion therapy.  Opposition, pp. 5-6;

23   Martinez Dec. ¶ 15.  Defendants correctly note that Martinez never pursued this claim through

24   the grievance process and did not make this allegation in the complaint.  However, in their

25   moving papers, Defendants presented evidence related to Martinez's allegation that Defendant

26   Vargas overextended his leg.  Defendants Statement of Undisputed Facts ¶¶43-49.  Martinez

27   merely presented evidence in an effort to create a triable issue of fact regarding Defendant

28   Vargas' medical care.  Martinez Dec. ¶¶ 13-15.  As such, the Court considers Martinez's

17

1   allegation.

2        The parties clearly raise a dispute as to whether Defendant Vargas overextended

3   Martinez's leg.  Statement of Issues ¶¶ 45-46.  Assuming *arguendo* that Defendant Vargas

4   overextended his leg, this isolated incident in Defendant Vargas' overall care of Martinez

5   militates against a finding of deliberate indifference.  See, e.g., Jett v. Penner, 439 F. 3d 1091,

6   1096 (9th Cir. 2006) ("If the harm is an 'isolated exception' to the defendant's "overall treatment

7   of the prisoner [it] ordinarily militates against a finding of deliberate indifference.'") (citing

8   McGuckin v. Smith, 974 F.2d at 1059).  Martinez presents no evidence identifying any other

9   incidents in Defendant Vargas' overall care.  As a matter of law, the lone asserted act of

10   Defendant Vargas does not rise to the level of deliberate indifference and she is entitled to

11   judgment as a matter of law on the Eighth Amendment claim.

12        Defendant Nacar

13        In the complaint, Martinez alleges that on November 4, 2007, Nurse Nacar "abused and

14   battered [him] when she simulated letting him fall." Complaint ¶ 95.  Martinez declares that

15   Nurse Nacar pretended to let him fall by withdrawing support.  Martinez Dec. ¶ 17.  Defendants

16   contend that this action cannot support a section 1983 claim.

17        The Court construes Martinez's claim in this context as a perceived threat that he would

18   be allowed to fall.  While the removal of support, if in fact done, might provide evidence as to

19   another claim, it is not actionable in this context.  Threats of bodily injury alone do not violate

20   the Eighth Amendment.  See Gaut, 810 F.2d at 925 (alleged threat of bodily harm failed to state a

21   cause of action under section 1983; concluding that it trivializes the Eighth Amendment to

22   believe that a threat constitutes a constitutional wrong).

23        Insofar as Martinez may allege that the simulated fall was a malicious and sadistic use of

24   force, the Court finds that the conduct was not violative of Eighth Amendment. "What is

25   necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of

26   the Eighth Amendment] depends upon the claim at issue ...." Hudson v. McMillian, 503 U.S. 1,

27   8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "The objective component of an Eighth Amendment

28   claim is ... contextual and responsive to contemporary standards of decency." Id. (internal

quotation marks and citations omitted). The malicious and sadistic use of force to cause harm

always violates contemporary standards of decency, regardless of whether or not significant

injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir.2002) (Eighth

Amendment excessive force standard examines de minimis uses of force, not de minimis

injuries)). However,"[t]he Eighth Amendment's prohibition of cruel and unusual punishments

necessarily excludes from constitutional recognition de minimis uses of physical force, provided

that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10

(internal quotations marks and citations omitted).  Here, simulating a fall by withdrawing support

is a de minimis use of force, if it can be construed as "force" at all, and thus not a violation of the

Eighth Amendment.  See, e.g., Coston-Moore v. Sandoval, 2010 WL 4647843, *3 (E.D. Cal.

Nov. 9, 2010) (court found that hitting plaintiff on the stomach with a roll of tissue was a de

minimis use of force and did not support violation of Eighth Amendment); Demarco v. Taylor,

2004 WL 941241, *2 (N.D. Cal. 2004) (inmate grabbed by arm, pushed into a chair, shook and

yanked out of chair not sufficient to implicate the Eighth Amendment).

Based on the above, Martinez's allegation that Defendant Nacar simulated or threatened a

fall does not establish a genuine issue of material fact as to the Eighth Amendment claim.

Martinez also alleges that on an unidentified date during catheterization, Nurse Nacar

"broke the sterile field but continued to use the contaminated equipment."  When Plaintiff

objected, Nurse Nacar jerked the catheter from Plaintiff's urethra.  Complaint ¶ 96.  Defendants

assert that on the date in question, Martinez expressed no complaint to Defendant Nacar or any

other nurse about yanking the catheter.  Defendants further assert that there is no evidence

showing that Martinez suffered any harm from the alleged contamination or yanking.

As to alleged contamination, the parties dispute whether or not Defendant Nacar

contaminated Martinez's catheter on June 14, 2006.  Defendant Nacar declares that touching the

part of the tube that remains outside the penis will not contaminate the catheter.  Declaration of

C. Nacar ¶ 11.  Martinez counters that the catheter is a closed system and touching any part of the

tube will contaminate it.  Martinez Dec. ¶¶ 18, 22.  Martinez offers only his own inexpert

opinion, which will not prevent summary judgment.  At most, this dispute is a difference of

opinion between a layperson and his assigned nurse.  This is insufficient, as a matter of law, to

establish an Eighth Amendment violation for deliberate indifference.  See, e.g., Estelle, 429 U.S.

at 107-08.   Further, even if Defendant Nacar contaminated the catheter, Martinez presents no

evidence demonstrating that the contamination was more than ordinary lack of due care for his

interests or safety.  Farmer, 511 at 835.

Martinez's additional claim that Defendant Nacar removed the catheter after he

complained is consistent with a continuing effort to provide treatment, not indifference to his

request or to his medical need.  Further, the allegation that Defendant Nacar yanked the catheter

from his penis when he asked her to use an uncontaminated catheter is a de minimis use of force

and not violative of the Eighth Amendment.  See, e.g., Coston-Moore, 2010 WL 4647843 at *3;

Demarco, 2004 WL 941241, at *2 (inmate grabbed by arm, pushing into a chair, shook and

yanked out of chair found not sufficient to implicate the Eighth Amendment).  Martinez provides

no evidence of injury or resulting harm from forceful removal.  Additionally, the uncontradicted

evidence demonstrates that after the alleged incident, Martinez received further catheterizations

that evening and the following morning, both from Defendant Nacar and other staff.  Statement

of Issues ¶¶ 74, 76-77.  This suggests that the alleged yanking of the catheter did not result in any

physical issue or other complication.

In his opposition, Martinez alleges that Defendant Nacar placed him in uncomfortable

positions, knowing it caused him pain.  Opposition, p. 6; Martinez Dec. ¶ 17.  However,

Martinez provides only his own vague, uncorroborated and self-serving declaration to support his

claim. This is insufficient to create a genuine issue of material fact.  See Villiarimo v. Aloha

Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (no "genuine issue" where the only

evidence presented is "uncorroborated and self-serving" testimony).  Martinez presents no

evidence in this case that Defendant Nacar placed Martinez in uncomfortable positions or knew

that certain positions may cause him pain.

As a final matter, Martinez alleges in his opposition that Defendant Nacar knew that he

"was repeating a suboptimal colonsocopy, knew that [he] legitimately requested an enema so that

the procedure would be successful, had the ability to communicate with physicians about [his]

1  request, but she refused to perform the enema leading to another failed colonsocopy."

2  Opposition, p. 6.  Martinez's complaint contains no such allegation.  However, Defendants

3  addressed this allegation in their statement of facts.  Defendants Statement of Undisputed Facts

4  ¶¶ 78-82.

5       Martinez seeks to hold Defendant Nacar liable for failure to give him an enema.  It is

6  undisputed that Dr. Neubarth ordered a colonoscopy for Martinez that was scheduled for March

7  26, 2008.  JSUF 78.  Dr. Neubarth's order did not call for an enema to be given to Martinez.

8  Statement of Issues ¶ 71; Defendants' Exhibit H, p. 40.  As a nurse, Defendant Nacar does not

9  have the power to go against the doctor's order.  See, e.g., Villa v. Rowe, 2009 WL 4823019, *6

10 (N.D. Cal. Dec. 10, 2009) (commenting that nurses did not have power to prescribe new

11 medication or to go against the doctors' orders prescribing certain medication; nurses not

12 deliberately indifferent).  Moreover, a prisoner may not claim deliberate medical indifference

13 unless the action or failure to act was harmful.  McGuckin, 974 F.2d at 1060.  There is no

14 indication that the failure to provide an enema was harmful to Martinez.  That his colonoscopy

15 was less than successful is not sufficient.

16      For the reasons discussed, Defendant Nacar is entitled to judgment as a matter of law on

17 Martinez's Eighth Amendment claim.

18      Defendant Van Natta

19      In the complaint, Martinez alleges that on or about November 21, 2007, Nurse Van Natta

20 intentionally left Plaintiff "in a position on his back known to [Van Natta] to be painful to

21 Plaintiff and to cause difficulty breathing" to retaliate against Plaintiff for "complaints about the

22 care he was receiving."  Complaint ¶ 97.

23      Defendants argue that Martinez can produce no evidence to show that Defendant Van

24 Natta placed him in a position that he knew or had reason to know would cause pain or

25 discomfort.  Motion, p. 10; Declaration of Michael Van Natta ¶ 20.  Martinez counters that when

26 he asked Defendant Van Natta to comply with the care plan and provide appropriate hygiene,

27 Defendant Van Natta left him in a position known to cause pain and to make it difficult for him

28 to breathe.  Opposition, p. 6; Martinez Dec. ¶ 27.

1       Aside from Martinez's own declaration, there is no evidence demonstrating that

2   Defendant Van Natta failed to comply with the care plan regarding cleaning.  Indeed, Martinez

3   does not state that Defendant Van Natta failed to provide any cleaning of his body.  Rather, he

4   implies that Defendant Van Natta did not perform the cleaning adequately.  Martinez Dec. ¶ 27.

5   This does not raise a triable issue of fact regarding deliberate indifference.

6       Martinez goes further to allege that when he complained, Defendant Van Natta left him in

7   a position known to cause pain and to make it difficult for him to breathe.  Martinez Dec. ¶ 27.

8   Martinez provides no other details to support this allegation.  Martinez neither directs the Court

9   to evidence in the record corroborating his statements nor does he submit evidence from a

10  physician or other medical expert to support his contention that he was placed in a position that

11  caused pain and/or difficulty breathing.  With the exception of his vague and uncorroborated

12  declaration, there is no supporting evidence.  The declaration alone is insufficient to create a

13  genuine issue of material fact.  See Villiarimo, 281 F.3d at 1061.

14      Based on the above, Defendant Van Natta is entitled to judgment as a matter of law on

15  Martinez's section 1983 claims.

16      Defendant Smith

17      In the complaint, Martinez alleges that on November 17, 2007, Defendant Smith "pushed

18  Plaintiff back into his chair by pushing on the front of his throat with the intent to cause harm" to

19  retaliate against Plaintiff "for his complaint over Smith twisting Plaintiff's head during an

20  attempt to reposition him."  Complaint ¶ 100.

21      Defendants contend that Defendant Smith pushed Martinez on his upper sternum to keep

22  him from falling forward, out of concern for his safety.  Motion, p. 10; Declaration of Mike

23  Smith ¶ 7.   In opposition, Martinez declares that Defendant Smith repositioned him by pulling

24  on the collar of his shirt from behind and choking him.  Martinez Dec. ¶ 30.  He also declares

25  that while being transferred to a Geri-chair, Defendant Smith pushed him back into the chair by

26  the front of his throat.  Martinez Dec. ¶ 30.  Martinez does not direct the Court to evidence of a

27  dispute that Defendant Smith repositioned him for the purpose of avoiding a fall.  Accordingly,

28  there is no evidence that Defendant Smith was deliberately indifferent to a serious medical need.

1    Farmer, 511 U.S. at 834.  Rather, Defendant Smith acted to prevent serious injury to Martinez.

2    Furthermore, to the extent Martinez may argue that Defendant Smith's actions constituted

3    a malicious and sadistic use of force, there is no indication that the actions were anything more

4    than de minimis.  Hudson, 503 U.S. at 9.  As such, the Court finds that the conduct was not

5    violative of Eighth Amendment.

6    2.  Conspiracy

7    In an effort to avoid summary judgment on his Eighth Amendment and section 1983

8    claims, Martinez contends that the actions of Defendants "took place as part of a conspiracy to

9    deny . . . his civil rights."  Opposition, p. 6.

10    A conspiracy claim brought under section 1983 requires proof of "'an agreement or

11    meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th

12    Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-

13    41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v.

14    Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

15    866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not

16    know the exact details of the plan, but each participant must at least share the common objective

17    of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

18    To establish the existence of a conspiracy, Martinez points to a November 2007

19    memorandum signed by over forty nurses.  Opposition, p. 6; Plaintiff's Ex. 13.  In relevant part,

20    the memorandum states:

21    Through the last four years, the physical and psychological stress on CSP-COR staff has
       increased due to the extra care privileges and treatment he receives, such as:
22                1.  Pressure relief every thirty minutes  . . .
                  2.  Daily baths. . .
23                3.  In and out cath . . .
                  4.  Letting him choose when his care will be performed . . .
24
25    I/M Martinez has been without consequences for his actions too long.  It is
       time that all special and unnecessary treatments be stopped immediately.  It is
26    unethical and irresponsible to have allowed the many special and far-reaching
       treatments to have gone on for so many years.  No society in the world should
27    allow this kind of treatment to continue.  No prisoner in the state, country, or
       world should ever receive the special treatment this I/M receives . . .
28    This I/M should be transferred from this institution immediately, especially since there is
       no reason to have him housed at an acute-care hospital.

1   Plaintiff's Ex. 13, p. 1.

2        Defendants contend that they have never conspired to undermine Martinez's care.  Garza

3   Dec. ¶ 41; Nacar Dec. ¶ 35; Smith Dec. ¶ 10; Van Natta Dec. ¶21.  Although the Court

4   previously denied Defendants' motion for summary adjudication on the issue of whether or not

5   they colluded, the Court did not reach the underlying issue of whether Defendants deprived or

6   otherwise interfered with Martinez's care.  The critical element in the asserted conspiracy is that

7   the conspiracy led to the underlying violation of Martinez's Eighth Amendment or civil rights.

8   Given the Court's determination that Defendants did not violate Martinez's civil rights, the Court

9   likewise finds that Martinez's assertion of a conspiracy to deny him his civil rights is

10  unsupported.[8]

11                    3.   Abuse of Dependent Adult

12       Defendants claim that Martinez's cause of action for abuse of dependent adult under

13  California Welfare and Institutions Code section 15600 *et seq.* fails because it does not apply to

14  them as "health care providers."  California Welfare and Institutions Code section 15657.2

15  provides:

16           Notwithstanding this article, any cause of action for injury or damage against a
             health care provider, as defined in Section 340.5 of the Code of Civil Procedure,
17           based on the health care provider's alleged professional negligence, shall be
             governed by those laws which specifically apply to those professional negligence
18           causes of action.

19  The "Legislature apparently concluded that the high standard imposed by [Welfare and

20  Institutions Code] section 15657 – clear and convincing evidence of (i) liability and (ii)

21  recklessness, malice, oppression or fraud – adequately protects health care providers from

22  liability under the statute for acts of simple or even gross negligence." Covenant Care, Inc. v.

23  Superior Court, 32 Cal.4th 771, 785, 86 P.3d 290 (2004).

24       To obtain the remedies under California Welfare and Institutions Code section 15657, "a

25

26  _____

27       [8]The Court further notes that only three of the five nurse defendants signed the memorandum.  When
     Defendants raised this argument in their summary adjudication motion regarding collusion, the Court rejected it
28   because discovery had not closed and Martinez had not been afforded a full opportunity to provide factual evidence
     related to the non-signing nurse defendants.  Discovery has now closed and Martinez has failed to present any facts
     regarding the non-signing nurses or the circumstances surrounding execution of the memorandum.

1  plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something

2  more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious

3  conduct. The latter three categories involve 'intentional,' 'willful,' or 'conscious' wrongdoing of

4  a 'despicable' or 'injurious' nature." Delaney v. Baker, 20 Cal.4th 23, 31, 82 Cal.Rptr.2d 610

5  (2004). "'Recklessness' refers to a subjective state of culpability greater than simple negligence,

6  which has been described as a 'deliberate disregard' of the 'high degree of probability' that an

7  injury will occur." Delaney, 20 Cal.4th at 31, 82 Cal.Rptr.2d 610 (citations omitted).

8  "Recklessness, unlike negligence, involves more than 'inadvertence, incompetence,

9  unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice

10  of a course of action . . . with knowledge of the serious danger to others involved in it.'" Delaney,

11  20 Cal.4th at 31-32, 82 Cal.Rptr.2d 610 (citations omitted).

12       The Court disagrees with Defendants' conclusion that a claim for abuse of a dependent

13  adult cannot be brought against health care providers.  Both the statutory and case law citations

14  suggest that the abuse of dependent adult act was intended to sanction egregious acts of

15  misconduct, including those by health care providers.  In other words, the act covers misconduct

16  that exceeds mere professional negligence.

17       Martinez argues that the evidence shows Defendants neglected him and "acted with

18  oppression, fraud and malice in doing so."  Opposition, p. 8.  For the same reasons discussed

19  above with respect to deliberate indifference, the Court finds that Martinez has not raised a

20  triable issue fact regarding his dependent adult abuse claim.  Cf. George v. Sonoma County

21  Sheriff's Dept., — F.Supp.2d —, 2010 WL 3155690, * 19 (N.D. Cal. Aug. 9, 2010) (court

22  declined to grant summary judgment on dependent adult abuse claim where triable issue of fact

23  regarding deliberate indifference claim).

24              4.  Medical Negligence

25       Defendants argue that Martinez's cause of action for medical negligence against them

26  fails because they did not breach a duty of care and they did not cause him harm.

27       "To establish a medical malpractice claim, the plaintiff must allege: (1) defendant's legal

28  duty of care toward plaintiff; (2) defendant's breach of that duty; (3) injury to plaintiff as a result

of that breach - proximate or legal cause; and (4) damage to plaintiff."  Rightley v. Alexander, 1995 WL 437710, at *3 (N.D. Cal. July 13, 1995) (citing to Hoyem v. Manhattan Beach School Dist., 22 Cal.3d 508, 514 (1978)).  "[M]edical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances."  Hutchinson, 838 F.2d at 392-93 (9th Cir. 1988) (internal citations omitted).

"[The] standard of care, which is the basic issue in malpractice actions, can be proven only by expert testimony.  Hutchinson, 838 F.2d at 392.  In order to defeat defendants' motion for summary judgment on his state law claim, Martinez must come "forward with conflicting expert evidence."  Hutchinson, 838 F.2d at 392-93.

Defendants contend that the nursing records provide evidence that they conscientiously attended to all of Martinez's medical needs.  Defendants also present evidence from Dr. David Kilmer, Professor and Chair, Department of Physical Medicine and Rehabilitation, at UC Davis Medical Center that the care given to Martinez at the Acute Care Hospital was "well-within the standard of care for a person with tetraplegia."  Exhibit O (Report of Dr. Kilmer, MD., p. 2.

In his opposition, Martinez counters that he has presented evidence that Defendants did not attend to all of his nursing needs.  Martinez cites a series of facts and exhibits without any analysis.  He does not identify the relevant standard of care or explain how Defendants' conduct fell below that standard.  Instead, it is left to the Court to parse through the exhibits.

On review, the exhibits are reports from three different experts proffered by Martinez. The first is the June 17, 2010 report of Charles E. Smith, M.D., a board certified psychiatrist. Plaintiff's Ex. 2.  However, this report is not instructive.  Dr. Smith does not provide evidence regarding the appropriate standard of care for nurses.  He also does not identify any of the particular nurses or any of the particular allegations at issue in this lawsuit.

The second exhibit is the report of David R. Patterson, M.D., Medical Director of the Casa Colina Centers for Rehabilitation. Plaintiff's Ex. 5.  This report is undated, but includes reference to record review "extending up to early 2008."  Plaintiff's Ex. 5, p. 3.  Dr. Patterson

opines that the Department of Corrections and "staff" failed to provide adequate care required by an adult suffering from cervical tetraplegia and a preexisting history of diabetes.  Plaintiff's Ex. 5, p. 1.  Although Dr. Patterson takes issue with the standard of care provided by physicians, he does not address any of the care provided by the nurses.  As such, this evidence does not create a triable issue of fact regarding whether nursing care fell below the standard.

The final exhibit is the November 7, 2008 report of Deanna Ashford, RN, BS, HCM, a legal nurse consultant.  Plaintiff's Ex. 11.  As with Dr. Patterson, Nurse Ashford opines that the Department of Corrections and its staff failed to provide the care required by Martinez.  Plaintiff's Ex. 11, ¶ 6.  In the report, Nurse Ashford indicates that she does not have a copy of the present 24 hour schedule for care, but opines that it is not being implemented, which puts the care at below the standard.  Plaintiff's Ex. 11, ¶ 15.  She also opines that "nurses" did not question physicians regarding medication orders in 2005 and in 2006, which is substandard care.  Plaintiff's Ex. 11, ¶¶ 23-24.  Additionally, she asserts that the staff caring for Martinez between January and May 2006 were not inspecting his skin and documenting it, which is substandard care.  Plaintiff's Ex. 11, ¶ 28.

As to the relevant allegations in this case, Nurse Ashford's opinion refers to two incidents of incontinent bowel movements in September 2006 and in November 2006 that were not discovered immediately.  Nurse Ashford opines that this can cause skin breakdown and falls below the standard of care.  Plaintiff's Ex. 11, ¶ 42.  Nurse Ashford's opinion suggests that an incontinent bowel movement should be discovered immediately, but her opinion does not reflect how frequently a patient should be checked for such a condition.  In short, she provides no quantifiable standard.  Her implied standard is for unremitting, round-the-clock monitoring for unintended bowel movements, but there is no indication that this is the relevant standard for nursing professionals in an institutional setting.

Nurse Ashford's opinion regarding bowel movements implicates allegations against Defendant Garza, who reportedly left Martinez soiled at the end of one shift and failed to detect a bowel movement on another occasion.  Martinez Dec. ¶¶ 7, 35  However, the absence of

information or opinion regarding the frequency of checks for unintended bowel movements is

fatal to the assertion that Defendant Garza's failure to discover unintended bowel movements

falls below any relevant standard of care.

Moreover, if Defendant Garza breached a standard of care by failing to discover bowel

movements "immediately," Martinez's cause of action for negligence still fails because he cannot

provide evidence of any injury.  As discussed above, there is no dispute that in September 2006,

when the assigned night nurse found that Martinez had soiled himself with a small dried amount

of fecal matter, she cleaned him at once.  JSUF 32.  This clearly falls within the standard of care

identified by Nurse Ashford.  Plaintiff's Ex. 11, ¶ 9.  Further, Martinez admits he was not harmed

from soiling himself.  Statement of Issues ¶ 33, p. 10.

Martinez also offers no evidence of harm from the second occasion that Defendant Garza

allegedly failed to detect and treat an unintended bowel movement.  Martinez Dec. ¶ 35.  That

the feces dried on his body is not sufficient to demonstrate injury.  Indeed, Defendants' expert

opined that a reasonable definition for excessive time to remain lying in feces would be the

presence of skin breakdown.  Defs' Ex. O (Report of David Kilmer, M.D., ¶ 3).  There is no

documented evidence of skin breakdown related to Defendant Garza's care.

Based on the above, Defendants' motion for summary judgment should be granted on

Martinez's cause of action for medical negligence.

5.   Retaliation

By separate order, the Court dismissed Martinez's retaliation claim against Defendants

Vargas, Nacar, Van Natta and Smith.  (Doc. 57).  As such, Martinez's retaliation claim involves

only Defendant Garza.

The Ninth Circuit Court of Appeals has enumerated the elements for First Amendment

retaliation in the "prison context" as: "(1) An assertion that a state actor took some adverse action

against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir.

1  2005).  A "plaintiff alleging retaliation for the exercise of constitutionally protected rights must

2  initially show that the protected conduct was a 'substantial' or 'motivating' factor in the

3  defendant's decision." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,1314 (9th Cir. 1989).

4        Defendant Garza denies retaliating against Martinez.  Garza Dec. ¶ 41.  Martinez counters

5  that Defendant Garza alleged rules violations by Plaintiff in retaliation for his complaints about

6  her inappropriate behavior, she splashed urine on him, she refused to clean his bedding, she

7  repeated her rules violation claims to prejudice Plaintiff's standing with authorities and she

8  implied that her husband would take adverse action against him.  Opposition, pp. 8-9.

9        The Court examines the timing of the events at issue.  According to the evidence before

10  the Court, Defendant Garza filed a rules violation report against Martinez for disrespect on

11  October 1, 2006.  Plaintiff's Ex. 18.  She asserted that Martinez stated: "You shouldn't smack

12  your lips over my genitals!  You're done.  I hate you.  Can you spell incompetent?"  Id.

13  Although he claims retaliation for complaints, there is no indication that Martinez undertook any

14  protected activity, e.g. filing a grievance or pursuing civil rights litigation, to formalize his

15  complaints before Defendant Garza filed the rules violation report.  Rhodes, 408 F.3d at 567.

16  Indeed, Martinez did not submit a grievance regarding Defendant Garza's gum smacking and her

17  medical care until October 3, 2006.  Ex. E 7.  As such, a reasonable jury could not conclude that

18  Martinez's protected conduct was a substantial or motivating factor in Defendant Garza's filing

19  of a rules violation report.  Martinez's assertion that Defendant Garza's rules violation was

20  dismissed also undermines his claim of an adverse action.

21        With regard to Martinez's assertion that Garza splashed him with urine and refused to

22  clean his bedding, this is not supported by the evidence.  As noted previously, the evidence

23  demonstrates that when Defendant Garza was turning Martinez to reposition him on November

24  3, 2006, his condom catheter became disconnected from his catheter bag, resulting in a small

25  amount of urine spilling onto him.  Garza Dec. ¶ 13; Exhibit I, p. 138.  Martinez does not deny

26  that the urine spill resulted from his condom catheter being disconnected.  There also is no

27  dispute that Defendant Garza immediately washed Martinez with soap and water and changed his

28

clothes.  Garza Dec. ¶ 32; Exhibit I, p. 138.

Martinez's claim that Defendant Garza repeated "her claims of 'verbal abuse' made in the rules violation report in the medical records in order to prejudice Plaintiff's standing with authorities such as the Board of Parole Hearings" is mere conjuncture.  Martinez Dec. ¶ 34. Martinez provides no evidence to suggest that the medical records (or portions of the records) completed by Defendant Garza were submitted or reviewed by the Board of Parole Hearings or other "authorities."

Martinez's claim that Defendant Garza retaliated "by implying that her correctional officer husband would take adverse action" against Martinez is not sufficient to support a retaliation claim.  As with his claim regarding the rules violation report, Defendant Garza reportedly told Martinez that her husband was a corrections officer before he filed a grievance against her. Ex. E 7.  Thus, Defendant Garza did not take this alleged adverse action against Martinez *because of* his protected conduct.  Rhodes, 408 F.3d at 567 (identifying elements of retaliation claim in the prison context).  Furthermore, even if Defendant Garza made an implied threat, such action does not constitute a constitutional wrong.  Gaut, 810 F.2d at 925.

Moreover, Martinez has not submitted any evidence that Defendant Garza's actions chilled the exercise of his First Amendment rights.  At this stage in the action, Martinez must present some evidence in support of his claim.  He may not continue to rely on conclusory assertions in his opposition that his rights were chilled.

For these reasons, the Court recommends that Defendants' motion for summary judgment on Martinez's claim of retaliation against Defendant Garza be granted.

6.   Intentional Infliction of Emotional Distress

Defendants assert that Martinez's cause of action for intentional infliction of emotional distress fails because their conduct was not extreme or outrageous and they caused him no emotional distress.

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003) (citing to Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991)) (quotations omitted). The California Supreme Court has explained that "outrageous" conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and that "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Hughes v. Pair, 46 Cal.4th 1035, 1050-51 (2009) (citations and quotation marks omitted).

Defendants assert that they conscientiously attended to all of Martinez's nursing needs. They argue that the only outrageous conduct is Martinez's verbal abuse of the nursing staff. Motion, p. 14. Martinez counters that Defendants have admitted that verbal abuse is outrageous conduct and therefore he has presented evidence sufficient to prove intentional infliction of emotional distress. Opposition, p. 10.

In his opposition, Martinez generally states:

> Defendants' conduct, as part of a conspiracy to deny Plaintiff his right to appropriate nursing care as a person paralyzed, without the ability to care for himself, who suffers from depression, anxiety, post-traumatic stress disorder, who relieves past trauma from being neglected by his nurses every time Defendant subject him to abuse and neglect, whose emotional state is worsened by Defendants' conduct, is outrageous in a civilized society that depends on licensed health care providers to act professionally and conscientiously on every patient's behalf whether they like the patient or not.

Opposition, p. 10. In his argument, Martinez does not direct the Court to any evidence of conduct so extreme as to exceed all bounds of that usually tolerated in a civilized community. Martinez also does not direct the Court to any evidence that Defendants' conduct was intended to inflict severe or extreme emotional distress. Thus, summary judgment is appropriate in favor of Defendants on Martinez's claim for intentional infliction of emotional distress

### 7. Assault - Defendant Vargas

In the complaint, Martinez asserts an assault claim against Defendant Vargas. The tort of assault recognizes the individual's right to peace of mind and to live without fear of personal

31

harm. Thing v. La Chusa, 48 Cal.3d 644, 649, 257 Cal.Rptr. 865, 771 P.2d 814 (1989). The elements of civil assault are: demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. Lowry v. Standard Oil Co., 63 Cal.App.2d 1, 6-7, 146 P.2d 57 (1944). "The tort of assault is complete when the anticipation of harm occurs." Kiseskey v. Carpenters' Trust for So. Calif., 144 Cal.App.3d 222, 232, 192 Cal.Rptr. 492 (1983). "Mere words, however threatening, will not amount to an assault." 5 Witkin, Summary 10th (2010 Supp.) Torts, § 383, p. 81 (citing Restatement (Second) of Torts § 31 (2010)).

Here, Martinez alleges in the complaint that Defendant Vargas assaulted him by making a death threat against him based on her statement that he would be in a grave by her.  Complaint ¶ 94; Ex. E 17.  There are no facts presented to indicate that Defendant Vargas was about to inflict immediate injury on Martinez when she issued the threat.  Thus, her statement is akin to a threat of future action, which cannot serve as the basis of an assault cause of action.  See Steel v. City of San Diego, — F.Supp.2d —, 2010 WL 2635759, * 14 (S.D. Cal. Jun. 30, 2010) (threatening message, without accompanying act that demonstrated intent to carry out the threat, insufficient for assault cause of action).

### 8.   Battery - Defendants Garza, Nacar, Smith and Van Natta

In his complaint, Martinez pursues a battery claim against Defendants Garza, Nacar, Smith and Van Natta.

"Under California civil law, the elements of a battery are as follows: (1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." Garcia v. City of Merced, 637 F.Supp.2d 731, 748 (E.D. Cal. 2008).  "A battery involves a touching." Price v. County of San Diego, 990 F.Supp. 1230, 1244 (S.D. Cal. 1998).

Defendants initially argue that Martinez's cause of action for battery fails because no evidence shows that any Defendant willfully used force or violence on Martinez.  Defendants

also assert that every physical contact with Martinez was in the course of performing nursing duties.  This latter assertion appears to suggest that Martinez consented to the contact, thereby undercutting the battery claim.  However, Defendants proffer no supporting legal authorities.  As such, the Court considers the battery claim against the individual Defendants.

Nurse Garza

Defendants argue that Martinez's allegation that Defendant Garza splashed urine on him is belied by evidence showing that urine spilled on Martinez when his condom catheter became disconnected and she immediately cleaned him and changes his clothes.  The Court agrees.  There is no dispute that the urine spilled when the catheter became disconnected.  Further, in his opposition to summary judgment, Martinez does not discuss any evidence related to his battery claim against Defendant Garza.  Martinez fails to raise a triable issue of fact.

Nurse Nacar

Martinez asserts that Defendant Nacar battered him by breaking the sterile field while catheterizing him and then yanking the catheter from his penis, pretending to let him fall by withdrawing support, and placing him in uncomfortable positions.  Opposition, p. 12.  Defendants focus on the contention that Defendant Nacar yanked the catheter and argue that it is unsupported by the evidence.

In the complaint, Martinez alleges that Defendant Nacar "abused and battered [him] when she simulated letting him fall." Complaint ¶ 95.  In his declaration, he contends that Defendant Nacar pretended to let him fall by withdrawing support.  Martinez Dec. ¶ 17.  This conduct does not amount to battery.  Withdrawal of support is not a harmful or offensive contact and by definition does not involve a touching.  Garcia, 637 F.Supp.2d at 748; Price, 990 F.Supp. at 1244.

Martinez also alleges that on an unidentified date during catheterization, Defendant Nacar "broke the sterile field but continued to use the contaminated equipment."  When Martinez objected, Defendant Nacar jerked the catheter from his urethra.  Complaint ¶ 96.  According to his declaration, Defendant Nacar "aggressively yanked the catheter from [his] penis when [he]

asked her to use an uncontaminated catheter." Martinez Dec. ¶ 18.  That Martinez asked for a different catheter demonstrates that he consented to the touching by Defendant Nacar, who removed the catheter from his penis.  Garcia, 637 F.Supp.2d at 748.  Further, as with his deliberate indifference claim, he provides no evidence of injury or resulting harm from the reportedly forceful removal.

Insofar as Martinez alleges that Defendant Nacar placed him uncomfortable positions, there is insufficient evidence to support a battery claim.  As discussed previously, there is insufficient evidence presented to the Court regarding the allegation that Defendant Nacar put Martinez in uncomfortable positions knowing it caused him pain.  Martinez's vague, uncorroborated and self-serving declaration is not sufficient to create a triable issue of fact.  Villiarimo, 281 F.3d at 1061.

Nurse Smith

Martinez contends that Defendant Smith pushed and pulled him by the neck.  Opposition, p. 12.  Defendants counter that Defendant Smith pushed Martinez on his upper sternum to keep him from falling forward, out of concern for his safety.  Declaration of Mike Smith ¶ 7.  Martinez does not provide evidence to dispute that Defendant Smith repositioned him for the purpose of avoiding a fall.  Defendant Smith's effort to prevent a fall does not amount to an intentional harmful or offensive contact.  Garcia, 637 F.Supp.2d at 748.

Nurse Van Natta

Martinez asserts that "Defendant Van Natta placed [him] in positions Defendant knew caused Plaintiff harm."  Opposition, p. 12; Martinez Dec. ¶ 27.  Martinez neither directs the Court to evidence in the record corroborating his statements nor does he submit evidence from a physician or other medical expert to validate his contention that he was placed in a position that caused pain and/or difficulty breathing.  With the exception of his vague and uncorroborated declaration, there is no supporting evidence.  The declaration is insufficient to create a genuine issue of material fact.  See Villiarimo, 281 F.3d at 1061.

1

<u>Nurse Vargas</u>

2

As a final matter, the Court notes that in his opposition, Martinez alleges that Defendant

3

Vargas battered him.  Opposition, p. 11.  However, Martinez's complaint does not assert a battery

4

cause of action against Defendant Vargas.

5

For the above reasons, the Court recommends that Defendants' motion for summary

6

judgment on Martinez's battery claim be granted.

7

9.   Qualified Immunity

8

Defendants claim that they are entitled to qualified immunity because they violated no

9

constitutional right and their conduct was objectively reasonable. Having concluded that

10

Defendants committed no constitutional violations, the Court need not consider whether qualified

11

immunity applies.

12

13

**CONCLUSION AND RECOMMENDATIONS**

14

For the reasons discussed above, the Court HEREBY RECOMMENDS the following:

15

1.       Defendants' Motion to Dismiss for failure to exhaust administrative remedies be

16

DENIED; and

17

2.       Defendants' Motion for Summary Judgment be GRANTED.

18

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

19

United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and

20

Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of

21

California.  Within **thirty (30) days** after being served with a copy, any party may file written

22

objections with the court and serve a copy on all parties.  Such a document should be captioned

23

///

24

///

25

///

26

///

27

///

28

35

1    "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

2    shall be served and filed within **fourteen (14) days** after service of the objections.  The Court will

3    then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

4    advised that failure to file objections within the specified time may waive the right to appeal the

5    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6

7        IT IS SO ORDERED.

8        **Dated:    January 3, 2011                     /s/ Dennis L. Beck**

9                                               UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28